801 So.2d 1239 (2001)
Deborah WHITE
v.
FRESENIUS MEDICAL CARE.
No. 01-1023.
Court of Appeal of Louisiana, Third Circuit.
December 12, 2001.
*1240 William Allen Repaske, Landry & Watkins, New Iberia, LA, Counsel for Fresenius Medical Care.
Charles Richard Davoli, Davoli & Sorrells, Baton Rouge, LA, Counsel for Deborah White.
Michelle Hope McCune Sorrells, Davoli & Sorrells, Baton Rouge, LA, Counsel for Deborah White.
Court composed of NED E. DOUCET, Jr., Chief Judge, JIMMIE C. PETERS and MARC T. AMY, Judges.
AMY, Judge.
The claimant alleges that she sustained neck and back injuries as the result of a work-related fall. The employer questions *1241 the timeliness of her claim for workers' compensation benefits. Following a hearing, the workers' compensation judge found that the claimant demonstrated the existence of a work-related accident and that she suffered a developmental injury, thereby permitting extended limitation periods for the filing of the claim. This extended period was found applicable to both medical and indemnity benefits. Penalties and attorney's fees were awarded. The employer appeals. For the following reasons, we affirm the award of benefits, but reverse the award of penalties and attorney's fees.

Factual and Procedural Background
The claimant was employed as a patient care technician at Fresenius Medical Center in New Iberia, Louisiana. She contends that while at work on June 18, 1999, she slipped on liquid, resulting in a fall. She contends that her ankles turned "sideways," her knees came together, and she fell onto the floor, hitting her tail bone. She described her head as whipping back. She testified that due to a recent foot injury, she was concerned with her ankles at the time. The record indicates that Ms. White reported the accident, complaining only of ankle pain. Despite the reported injury, Ms. White continued working and did not seek medical attention. She stated that the "strained feeling" in her ankles went away after a couple of days. She complains, however, that within one to two weeks, she developed other problems, namely, pressure in her back and pain in her groin area. She continued to work and reported no further injuries to her employer at that time.
During July and September visits to her gynecologist, the claimant made no report of either back or groin pain. In October, however, she reported to her gynecologist that she was suffering from pain in the left groin area. She was diagnosed with a hernia, which was repaired by an October 21, 1999 surgery.[1] Due to this procedure, Ms. White requested leave from work on October 20. She has not returned to work since that time.
According to Ms. White's testimony, she recovered from the surgery and had no reason to believe that the pain suffered prior to the surgery was unrelated to the hernia, but that her pain continued to worsen. At that point, her physician felt the pain was not related to the hernia and referred her to Dr. Ricardo Leoni, a neurosurgeon. The claimant first saw Dr. Leoni in November 1999 and complained of back and leg pain. According to Dr. Leoni, an MRI revealed a herniated disc at the L4-5 level. In January 2000, Dr. Leoni performed a microdiskectomy at the L4-5 level.
After the lumbar surgery, the claimant contends she continued to experience pain, not only in her back, but in her neck as well. She testified, however, that she did not complain of the neck pain for a long period and did not, in fact, report it to Dr. Leoni until June 2000. Dr. Leoni's records and deposition confirm that she continued to complain of lumbar pain and, on June 27, 2000, also complained of left arm pain. By her July 25 visit, she reported that her neck and arm pain "had gotten much worse." She also reported numbness in her fourth and fifth fingers and weakness in her hand. An MRI revealed a herniated disc at the C5-6 level. Due to what Dr. Leoni considered to be a large herniation, a foraminotomy and a microdiskectomy were performed on August 7, *1242 2000. In subsequent visits, Ms. White continued to complain of pain. At the time of his deposition, Dr. Leoni reported that he did not feel that the claimant could return to work due to the surgeries.
During this period when Ms. White did not return to work, she received disability. Due to her continued stay on disability, the claimant's employment with FMC was terminated. On October 2, 2000, Ms. White filed a Disputed Claim for Compensation seeking benefits and penalties and attorney's fees. FMC answered the claim, alleging that the matter was prescribed as a claim was not filed within one year of the accident. It also questioned the causal connection between the alleged accident and the injuries claimed.
The workers' compensation judge found in favor of the claimant, concluding that a work-related accident was demonstrated. With regard to the prescription issue, the workers' compensation judge determined that the claimant had suffered a developmental injury which, by statute, enjoys a longer filing period. The judge concluded that this longer period was applicable to the award of both indemnity and medical benefits. Penalties and attorney's fees were also awarded.
FMC appeals, assigning the following as error:
1. The Trial Court erred in holding that White's back problem was caused by the June 18, 1999 accident.
2. The Trial Court erred in holding that White's neck problem was caused by the June 18, 1999 accident.
3. The Trial Court erred in holding that the claim for medical benefits had not prescribed.
4. The Trial Court erred in holding that White is entitled to reimbursement of all medical[ ] expenses related to her neck and back injuries.
5. The Trial Court erred in implicitly holding that White is entitled to indemnity benefits from October 21, 1999.
6. The Trial Court erred in assessing penalties and attorney fees.
The claimant has answered the appeal, seeking additional attorney's fees on appeal.

Discussion

Causation of Back Condition
FMC first argues that the trial court erred in concluding that the claimant's back injury resulted from the slip-and-fall accident of June 1999. Specifically, FMC points to Dr. Leoni's testimony that, as a general principle, he does not relate pain to an accident unless it manifests itself within six weeks, and Ms. White's failure to report back pain to her physicians until September 1999. Further, as stressed by FMC, when she did report the back pain, she did not indicate to physicians that it resulted from a work-related accident. Nor did she consistently indicate the date of onset of the pain.
The Louisiana Supreme Court has explained that, in a workers' compensation case, the claimant bears the initial burden of demonstrating the causal connection between the disability claimed and the work-related accident by a preponderance of the evidence. Quinones v. U.S. Fidelity & Guar. Co., 93-1648 (La.1/14/94); 630 So.2d 1303, 1307, quoting, Hammond v. Fidelity & Cas. Co., 419 So.2d 829, 831 (La.1982). In finding the causal connection established in the present case, the workers' compensation judge rendered extensive written reasons, first explaining the lay testimony and medical evidence/testimony, before summarizing as follows with regard to the back injury:

*1243 It is undisputed that the claimant fell while in the course of and arising out of her employment on June 18, 1999. Although she only reported an injury to her ankle on the day of the accident, the claimant began feeling pressure in her back, and pain in her groin and left leg within 2-4 weeks later, as evidenced by the uncontradicted testimony of the claimant, Ms. Suire, Ms. Cassisa and Mr. Boutee [sic]. The pain continued to worsen. Dr. Leoni testified it was more probable than not, that the claimant's fall caused her present condition. Dr. Leoni also testified that if pain starts within six weeks of an accident, he would contribute [sic] the injury to the accident, although some people would give a longer time frame. The claimant's failure to seek treatment for her back injury immediately after the accident is understandable. The evidence shows that she thought the pain would go away on its own. The claimant tried working. Dr. Leoni also testified it is not unusual for people to try to continue working after receiving an injury, until the pain reaches the point where it is intolerable. In fact, Dr. Leoni further testified the claimant may have overdone it a bit. The claimant needed her job and did not want to jeopardize her future employment status.
(Record citations omitted.) In our review of the record, we are mindful that the above factual findings of the workers' compensation judge are subject to the manifest error standard of review. See Chaisson v. Cajun Bag & Supply Co., 97-1225 (La.3/4/98); 708 So.2d 375; Olander v. Schillileagh's, 99-1896 (La.App. 3 Cir. 4/19/00); 759 So.2d 261, writ denied, 00-1416 (La.9/15/00); 768 So.2d 1279.
As seen from the written reasons, Ms. White testified that pressure in her back and groin pain developed within one to two weeks after the June 18, 1999 fall. Richard Boutte, the claimant's boyfriend, and Cynthia Cassisa, a close friend of the claimant, each testified that Ms. White verbalized complaints of back pain within this period. Although she did not report groin pain to physicians until October 1999, and back pain until November 1999, the claimant testified at trial that she initially attributed the groin pain to a gynecological condition and that she felt that she could "go on." She continued to work at this time. After she reported the pain and a hernia was diagnosed, she attributed the pain to that condition. When her back and groin complaints continued after the hernia surgery, however, she was referred to Dr. Leoni. As explained above, Dr. Leoni found that the claimant had sustained a herniated disc. When asked whether the fall, as described by Ms. White, could have caused her condition, Dr. Leoni responded, "Yes." When asked whether it could also have aggravated a degenerative condition, Dr. Leoni responded, "Correct."
As pointed out by FMC, Dr. Leoni explained that, generally, injuries arising from an accident manifest themselves within six weeks. While Ms. White may not have reported her injuries within this time frame, if the workers' compensation judge made credibility determinations in her favor, the record indicates that her symptoms arose within one to two weeks after the fall. Her failure to report this condition, which she believed might resolve and which she described as worsening over time, does not prohibit a finding of causation. As the workers' compensation judge apparently made the necessary credibility determinations in the claimant's favor and these determinations are best left to the trier of fact, we find no manifest error in the finding that the back condition was related to the work-related accident.

Causation of Neck Condition
Next, FMC contests the determination that Ms. White's neck condition resulted *1244 from the June 18, 1999 fall. In particular, the employer points out that the claimant did not report neck or arm complaints to a physician until a year after the accident and that Dr. Leoni explained during his testimony that, in his opinion, complaints arising more than six weeks after an accident are generally not attributable to the accident. Finally, FMC addresses a discrepancy between Ms. White's trial testimony, where she testified that her neck complaints first arose in August 1999, while, at trial, she stated that they probably arose before this time.
In written reasons, the workers' compensation judge explained:
This Court also finds the claimant injured her neck in her fall. The evidence shows that the pain in her neck began in August 1999, which would be about six weeks post accident. The claimant did not verbalize her neck pain and upper extremity numbness to a physician until July 2000. The evidence shows the claimant thought she slept wrong, and she was too concerned about her other health problems (hernia, back surgery, hysterectomy) to pay attention to the neck pain. It was not until her arm started going numb did she report her problems to Dr. Leoni. Dr. Leoni testified the [sic] if that a patient does not verbalize pain does not mean she is not experiencing it. Dr. Leoni testified if the claimant had neck pain within six weeks after her fall, that he would relate the problems in her neck to the fall.
(Record citations omitted.)
At trial, the claimant testified that her neck complaints began before August 1999. When questioned regarding deposition testimony indicating that it did not begin until the month of August, the claimant testified as follows regarding the discrepancy complained of by FMC and her failure to report the injury to Dr. Leoni for a year after the accident:
Q. I'm not clear, and you may have said this and I just didn't catch it again, but your neck problems began in August sometime; is that correct, August of 1999?
A. No, I would say it was probably before August.
Q. Do you remember me asking you about when your neck problems began in your deposition back in November?
A. Honestly? No.
Q. On Page 38 of your deposition, at Line 23, I asked: "When did that neck pain first arise or become noticeable?"
You said: "I'm not certain. It wasI don't know, maybe around in late August. I want to say sometime in August, probably August, the beginning of August." But now you recall it was closer to the time of the accident?
A. Okay. When I started experiencing problems with my neck, I experienced The process of pain, it started with one type; and it went into something else. Actually, the muscle pain, the muscular pain, and the pain that I had that ran like fromthrough my neck, down into my shoulder, well, there was that type of pain which I had beenI hadI had previously been experiencing that. Then I kind of started with a little pain that started to radiate down further into my arm. And that pain got progressively worse, but I just probably never said anything about it until I noticed I started losing strength. And the pain got persistent because it would come and go. It didn't stay there all the time. But when it began to stay there all the time, I knew that it wasn't just muscle tension or a crick in the neck. So, actually, I experienced two differentI mean, there was a different process of pain. *1245 And the first one, I probably would have never even considered that pain.
Again, the workers' compensation judge chose to credit Ms. White's testimony indicating a timely onset of pain and a reluctance to report to her physicians due to her failure to relate the pain to the accident and her optimism that the condition would resolve. Accepting this as true, and considering it in light of Dr. Leoni's testimony regarding the onset of symptoms, the workers' compensation judge's finding was not manifestly erroneous.

Prescription of Medical Benefits
By this assignment of error, FMC questions the workers' compensation judge's determination that Ms. White suffered from a "developmental injury," thereby permitting an extended period of prescription. In particular, FMC questions the determination that this period of prescription applies, not only to indemnity benefits, but to medical benefits. FMC argues that, because the extended filing period for developing injuries does not apply to medical benefits, the standard limitation period of one year from the accident applies. As Ms. White's claim was not filed within one year of the accident, FMC contends that her claim for medical benefits is untimely.
La.R.S. 23:1209 sets forth the applicable filing periods as follows:
A. In case of personal injury, including death resulting therefrom, all claims for payments shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter, or unless within one year after the accident a formal claim has been filed as provided in Subsection B of this Section and in this Chapter. Where such payments have been made in any case, the limitation shall not take effect until the expiration of one year from the time of making the last payment, except that in cases of benefits payable pursuant to R.S. 23:1221(3) this limitation shall not take effect until three years from the time of making the last payment of benefits pursuant to R.S. 23:1221(1),(2),(3), or (4). Also, when the injury does not result at the time of, or develop immediately after the accident, the limitation shall not take effect until expiration of one year from the time the injury develops, but in all such cases the claim for payment shall be forever barred unless the proceedings have been begun within two years from the date of the accident.

. . . .
C. All claims for medical benefits payable pursuant to R.S. 23:1203 shall be forever barred unless within one year after the accident or death the parties have agreed upon the payments to be made under this Chapter, or unless within one year after the accident a formal claim has been filed with the office as provided in this Chapter. Where such payments have been made in any case, this limitation shall not take effect until the expiration of three years from the time of making the last payment of medical benefits.
(Emphasis added.)
FMC acknowledges the language regarding the longer prescriptive period related to developing injuries described in Paragraph A. The employer points to the Louisiana Supreme Court case of Lester v. Southern Caves. Ins. Co., 466 So.2d 25 (La.1985), wherein the Court considered the applicability of the period limitations of Paragraph A to medical expenses. At the time of the 1985 case, La.R.S. 23:1209 did not contain Paragraph C, which relates to medical expenses. In considering the language of Paragraph A, the Court concluded *1246 that La.R.S. 23:1209 is applicable only to recovery of indemnity benefits. With regard to medical expenses, the Court explained that, absent language specifically related to recovery of these expenses, the ten-year limitation period for personal actions set forth in the Louisiana Civil Code was applicable.
Subsequent to Lester, the legislature amended La.R.S. 23:1209 to include Paragraph C, setting forth specific limitation periods for recovery of medical expenses. FMC argues that, in addition to the discussion in Lester indicating that La.R.S. 23:1209 does not apply to medical expenses, the amendment of the statute to include a specific, prescriptive period is clear and unambiguous. Thus, according to FMC, although operation of Paragraph A may afford a "developing injury" a more extensive limitations period for indemnity benefits, the more extensive limitations period for medical expenses has now been specifically excluded by omission of this language from Paragraph C. We disagree.
Article 9 of the Louisiana Civil Code requires: "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." Although FMC argues that the text of La.R.S. 23:1209 is clear and unambiguous, we point out that, even if this assertion is correct, we must consider whether its application would lead to absurd consequences in this situation. In this case it would.
If this court were to accept FMC's argument regarding the Supreme Court's discussion in Lester of a previous version of the statute coupled with the wording of La.R.S. 23:1209(C), a claimant would potentially be permitted to receive indemnity benefits, but not medical expenses. Although this type of rigid application was adopted by a panel of the second circuit in Holcomb v. Bossier City Police Dept., 27,095 (La.App. 2 Cir. 8/25/95); 660 So.2d 199, we decline to follow such an interpretation. In that case, two members of the five-judge panel dissented on this point, with one member writing that it was not the legislature's intent in overruling Lester to "reach a result as conflicting and incongruous as the one in this case." Id. at 204 (Brown, J., dissenting.) We conclude that a similar result would be unacceptable in this case. Accordingly, we find no error in the workers' compensation judge's conclusion that the limitations period applicable in "developing injury" cases relates to both indemnity and medical benefits. This assignment lacks merit.

Statutory Limitation of Medical Expenses
Next, FMC argues that the trial court erred in awarding all of the medical expenses incurred. Rather, because there is no indication that Ms. White sought or received approval for her neck and back treatments, FMC contends that La.R.S. 23:1142 is applicable and restricts the medical payments as follows:
B. Nonemergency care. (1) Except as provided herein, each health care provider may not incur more than a total of seven hundred fifty dollars in nonemergency diagnostic testing or treatment without the mutual consent of the payor and the employee as provided by regulation. Except as provided herein, that portion of the fees for nonemergency services of each health care provider in excess of seven hundred fifty dollars shall not be an enforceable obligation against the employee or the employer or the employer's workers' compensation insurer unless the employee and the payor have agreed upon the diagnostic testing or treatment by the health care provider.
*1247 According to FMC, because of lack of mutual consent for Ms. White's nonemergency care, "[u]nder the clear and unambiguous language of the statute, in the event either or both of White's medical problems are ultimately found to have resulted from the accident, each health care provider is limited to a total reimbursement of $750."
We first point out that the record does not reveal that this argument was presented to the workers' compensation judge for consideration below nor does it appear that a ruling was made in this regard. In any event, the argument is misplaced. As can be seen by use of the "developing injury" limitations period, this matter has not proceeded in standard fashion as may have been anticipated by much of the workers' compensation statutory scheme. Rather, according to the claimant's testimony, she did not immediately seek medical attention and did not immediately associate the medical problems with the work-related fall. According to her testimony, she initially associated her symptoms with other medical problems. As her expenses were provided by medical insurance, the employer did not have an opportunity to approve/disapprove of any treatment until the time of the filing of the workers' compensation claim. Only at that point, which was in October 2000, was the employer in a position to deny/approve the claimed expenses as assumed by La.R.S. 23:1142. By its answer to the disputed claim form, FMC denied the claim after the medical expenses sought were incurred. Having made this observation, we again point out that this argument is raised for the first time on appeal. This assignment lacks merit.

Date of Indemnity Benefits
FMC next argues that the workers' compensation judge's ruling regarding the claimant's entitlement to indemnity benefits is flawed insofar as it may be interpreted to provide for benefits from the date Ms. White ceased working due to the hernia surgery in October 1999. Rather, because no physician related the hernia or the necessity of the hernia surgery to the fall, FMC contends that Ms. White's date of disability must be considered to be in December 1999 when Dr. Leoni attempted to treat the back complaints with a period of bed rest.
As explained above, the record indicates that Ms. White began to experience back and leg pains after the fall. This pain led to the hernia diagnosis. The condition was repaired by the October 1999 surgery. The day prior to the surgery, she ceased working and did not return, as the surgery did not resolve the pain. The continued complaints of pain eventually led Ms. White to Dr. Leoni who detected the herniated disc. While never put into terms of date of disability due to the herniated disc, Dr. Leoni's deposition is revealing as to the claimant's inability to work at her position at FMC during the period now complained of by the employer. The deposition reveals the following:
Q. It was not in your report, you never addressed the issue, but when you first saw her in October/November 1999, did you have an opinion as to whether she could work at that point in time or would you have placed any restrictions on her? Could you give us an opinion in retrospect since you didn't address it at that time?
A I saw her on November 16th of '99 and operated on her at the end of January, so that's two and a half months later. And when I put her on bed rest
Q That was December.
A that's when I would have told her not to work.

*1248 Q She was not working at the time because of her hernia surgery so it was never addressed, but if it was asked to you at that point in time, what would your opinion have been concerning her ability to work in regards to her back?
A Well, when I saw her, I would have told her that she could work initially and if the pain got worse, to stop, is what I would have told her to do.
Q Considering the nature of her complaints, would you have placed any lifting type restrictions on her at that point in time?
A When I first saw her?
Q Yes.
A Yes, I would have told her not to lift more than 25 or 30 pounds.
Q If her job required her to lift patients as a dialysis technician, you would have told her you cannot do that type of activity?
A That's what I would have told her, correct?
Q And then you would recommend that she not work at all from the time you put her on bed rest until she had recuperated from her surgery
A Correct.
Thus, it is clear from this record that, due to her condition, Dr. Leoni would have assigned at least modifications due to the claimant's condition. Whether these modifications would have been met is unresolved by the record. Therefore, during the period questioned by the employer, the award of either temporary total disability benefits or supplemental earnings benefits at a TTD rate, is not one requiring reversal.

Penalties and Attorney's Fees
Finally, FMC questions the award of $2,000 in penalties and $2,000 in attorney's fees. La.R.S. 23:1201 provides, in part:
F. Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. Penalties shall be assessed in the following manner:
. . . .
(2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.
Although the workers' compensation judge determined that the claimant satisfied the requisite burden in this case with regard to entitlement to benefits, a determination we have affirmed, our review of the record in this procedurally awkward case does not support an award of statutory penalties and attorney's fees. In her support of the awards, Ms. White argues that the employer/insurer failed in its responsibility to investigate the possibility of injury from the work-related fall. In particular, Ms. White points to conversations she had with her supervisor and another employee at FMC at the time she applied for short-term disability prior to the lumbar surgery.
With regard to these conversations, the record supports, at most, a finding that FMC personnel considered whether Ms. White might consider a workers' compensation claim or whether she might continue in her pursuit of medical insurance and disability benefits. In any event, Ms. *1249 White did not make a workers' compensation claim or seek either indemnity or medical benefits until the time the disputed claim form was filed. Simply put, the employer was never put in the position of either providing, or failing to provide payment, in accordance with the compensation statutes until the date of the compensation form. Certainly the face of the medical records, which evidence Ms. White's failure to report her injuries after the accident or correlate her pain to the work-related accident, reveal a basis on which the employer could reasonably controvert the claim. Accordingly, the award of statutory penalties and attorney's fees is erroneous. The award is reversed.[2]

DECREE
For the foregoing reasons, the decision of the Office of Workers' Compensation is affirmed insofar as it finds the claimant, Deborah White, entitled to workers' compensation benefits. However, the award of penalties and attorney's fees is reversed. All costs of this appeal are assigned to defendant, Fresenius Medical Center.
AFFIRMED IN PART; REVERSED IN PART AND RENDERED.
NOTES
[1] There appears to be no contention that the hernia was related to the work-related accident.
[2] Due to this conclusion that the award for penalties and attorney's fees was erroneously made by the workers' compensation judge, it follows that an award for attorney's fees on appeal would be inappropriate as well. Therefore, we do not separately address Ms. White's answer to the appeal wherein she seeks additional attorney's fees for work done on appeal.