I, GASKINS, Judge.
The plaintiff, Marcie Miller,[1] appeals from a decision of the Office of Workers’ Compensation, denying her claim against the State Fair of Louisiana for death benefits, penalties, and attorney fees, arising out of the death of her son, Duane Miller. For the following reasons, we affirm the trial court judgment.
FACTS
Danny Higginbottom, a/k/a Danny Cos-mo, d/b/a Cosmic Entertainment, claimed to be a world-class diver. He had a high diving act and dunking booth that he operated at various fairs and carnivals around the country. In the autumn of 1996, Hig-ginbottom came to the State Fair of Louisiana (Fair) with Duane Miller and two other employees. Higginbottom had only recently employed Miller, age 35, to help with setting up the booth, selling tickets, and soliciting customers.
During the course of the Fair in Shreveport, Miller expressed an interest in working in the dunking booth. Higginbottom trained Miller for six days prior to allowing him to take two hour shifts as the person to be dunked. The seat was some 32 feet above a tank of water which was 7 feet deep. The tank was 22 to 24 feet in diameter and held approximately 22,000 gallons of water.
On November 3, 1996, Miller was injured in the dunking booth, suffering a subdural hematoma. He became ill and was taken to Louisiana State University Medical Center (LSUMC). Surgery was performed, but Miller died on November 8, 1996 as a result of his severe injuries.
On October 29, 1997, Marcie Miller filed a claim for workers’ compensation death benefits, naming as defendants Higginbot-tom; the Fair; the Louisiana Worker’s Compensation Corporation (LWCC), the insurer of the Fair; and Degeller Attractions, Inc., the company with which the Fair contracted to provide rides and attractions at the Fair. Degeller was eventually dismissed by Ms. |2Miller. At trial, Ms. Miller’s attorney argued that he should receive a percentage of any attorney fees awarded to LSUMC.
The Fair filed a cross-claim against Hig-ginbottom, claiming that Duane Miller was employed directly by Higginbottom, who was an independent contractor.
LSUMC filed a petition for intervention and cross-claim against the Fair, LWCC, and Higginbottom, to recover $37,880.30 in medical, surgical, and anesthesia charges incurred by Miller. LSUMC also filed medical hens against all parties involved.
Trial on the matter was held on February 1, 1999. Higginbottom testified that on several occasions, he saw Miller fall from the chair into the water, bent at the waist at almost a 45-degree angle. The proper position for the fall is almost completely upright. He also stated that Miller appeared to be fine prior to working in the dunking booth on November 3.
The Fair contended that it had no connection with Higginbottom’s operation of the dunking booth. It asserted that Hig-ginbottom and Miller were independent contractors and the Fair was not the statutory employer of either. According to the Fair, Higginbottom merely rented space to set up his dunking booth. In exchange for booth space, Higginbottom agreed to pay the Fair 25% of his proceeds. The Fair required Higginbottom to show proof of liability insurance and to name the Fair as an additional insured on the policy. However, Higginbottom was not required to show that he had workers’ compensation insurance. According to Fair officials, it was assumed that the various vendors and attractions would carry their own workers’ compensation insurance. Higginbottom did not have such insurance. The Fair *130 had 15 permanent, full-time employees and paid workers’ compensation for those employees. However, Higginbottom and all other |3exhibitors were considered to be independent contractors and not employees of the Fair.
The WCJ found that Higginbottom was liable to Ms. Miller for workers’ compensation death benefits and was liable to LSUMC for medical expenses incurred in the treatment of Miller. The WCJ also assessed penalties and attorney fees against Higginbottom. Ms. Miller was awarded $2,000.00 in penalties and $5,000.00 in attorney fees. LSUMC was awarded $2,000.00 in penalties and $750.00 in attorney fees. The claim of Ms. Miller’s attorney to recover attorney fees from LSUMC was denied. Judgment was also rendered in favor of the Fair and LWCC, rejecting Ms. Miller’s claim for death benefits.
In written reasons for judgment, the WCJ made several findings of fact. She concluded that Miller suffered an accident on November 8, 1996, within the statutory definition of that term, and that he died as a result of the accident. The WCJ found that the accident was Miller’s fall into Hig-ginbottom’s dunking booth.
The WCJ concluded that Miller was an independent contractor providing manual labor for his principal, Higginbottom. Those services included construction of the dunking booth, solicitation and sale of tickets, and performing in the dunking booth. These services were undertaken with a minimum of supervision from Higginbot-tom as to the means and method, and Miller paid his own expenses. The WCJ found that Miller provided no services exclusively for Higginbottom and that he could have quit or been discharged at any time. Miller was not considered a payroll employee by Higginbottom.
The WCJ concluded that the Fair was a lessor to Higginbottom, providing space for a fixed percentage remuneration. The Fair was in the business of providing space and its name for the collective operation of carnival vendors to perform services for the public. The Fair was not in the dunking booth business.
|/The WCJ found that Higginbottom did not reasonably controvert the claims of Ms. Miller and LSUMC and that he acted arbitrarily and capriciously and without probable cause in denying those claims. Therefore, he was found liable to those parties for penalties and attorney fees.
The WCJ found that there was no statutory basis for the argument that LSUMC owed Ms. Miller’s attorney a portion of its attorney fee recovered in this case, noting that in this workers’ compensation death case, Ms. Miller is not entitled to recover medical expenses incurred by her son.
A judgment incorporating the written reasons was filed on March 15, 1999. Only Ms. Miller has appealed the judgment.
On appeal, Ms. Miller argues that the WCJ erred in finding that the Fair was not the statutory employer of Higginbot-tom and Miller. The plaintiff assets that Higginbottom was an independent contractor who performed manual labor for the Fair and therefore the Fair is liable for workers’ compensation benefits to Higgin-bottom and his employees. The plaintiff also contends that the Fair is a principal which should not avoid its obligation to employees by interposing an insolvent independent contractor or subcontractor. The plaintiff also contends that the WCJ erred in failing to award penalties and attorney fees against the Fair. These arguments are without merit.
STATUTORY EMPLOYER
A hearing officer’s findings of fact in a workers’ compensation proceeding may not be set aside in the absence of manifest error or unless they are clearly wrong. Tatum v. St Patrick’s Psychiatric Hospital, 32,616 (La.App.2d Cir.12/30/99), 748 So.2d 1276, writ denied, 2000-0288 (La.3/24/00), 758 So.2d 157. At issue is not *131 whether the WCJ was right or wrong, but whether the factual conclusion was reasonable. Costin v. Lasalle Testers, 32,632 (La.App.2d Cir.3/1/00), 754 So.2d 401, writ denied, 2000-0879 (La.5/5/00), 761 So.2d 552, 2000 WL 665725. | BReasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Costin v. Lasalle Testers, swpra.
La. R.S. 23:1021(6) provides:
(6) “Independent contractor” means any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or as a whole, under the control of his principal as to results of his work only, and not as to the means by which such result is accomplished, and are expressly excluded from the provisions of this Chapter unless a substantial part of the work time of an independent contractor is spent in manual labor by him in carrying out the terms of the contract, in which case the independent contractor is expressly covered by the provisions of this Chapter. [Emphasis supplied.]
An independent contractor is one who has contracted for a specific piecework, as a unit, to be done according to the independent contractor’s own methods, without being subject to the control and direction, in the performance of the service of his employer. It must also appear that a specific price for the overall undertaking is agreed upon; that its duration is for a specific time and not subject to termination or discontinuance at the will of either side without a corresponding liability for its breach. Riles v. Truitt Jones Construction, 94-1224 (La.1/17/95), 648 So.2d 1296.
In this case, the WCJ found that Higginbottom was an independent contractor. This finding of fact is not disputed by the parties. However, the plaintiff alleges that the operation of the dunking booth by Higginbottom constituted the performance of manual labor for the Fair, giving coverage to Higginbottom and his employees, through the Fair’s workers’ compensation insurance.
In Lushute v. Diesi, 354 So.2d 179 (La.1977), the Louisiana Supreme Court held that, in order for an independent contractor to be covered under the manual labor exception, he must show that a substantial part of his work time is | fispent in manual labor in carrying out the terms of his contract with the principal and the work performed by him is part of the principal’s trade, business or occupation. See also Rance v. Harrison Company, Inc., 31,503 (La.App.2d Cir.1/20/99), 737 So.2d 806, writ denied, 99-0778 (La.4/30/99), 743 So.2d 206.
The test for defining “manual labor” is work where the physical element predominates over the mental element. It is the hands-on feature of labor, combined with the strenuous quality of the work, which determines whether a task is manual or not. Riles v. Truitt Jones Construction, supra.
The record fails to show that Higginbot-tom performed manual labor for the Fair. First, the contract between Higginbottom and the Fair was for exhibition/concession space. It shows that Higginbottom leased a 45’ by 45’ space for the operation of his dunking booth and Higginbottom was to pay the Fair 25% of the proceeds or $500, whichever was greater. It specifies how the space may be used, what improvements may be made in the space and provides that such improvements must be removed at the exhibitor’s expense within three days of the close of the Fair. Higgin-bottom was paying the Fair for the right to participate; the Fair did not pay Hig-ginbottom. Further, the facts do not show that a substantial part of the work performed by Higginbottom was spent in manual labor. Higginbottom and his employees erected the dunking booth apparatus. Higginbottom testified that this took from 5 to 8 hours. After that point, Hig-ginbottom and his three employees took *132 turns soliciting customers, selling tickets and performing in the dunking booth. The majority of these activities were not particularly strenuous. It does not appear that these activities constitute manual labor. Therefore, the manual labor exception to the independent contractor rule of La. R.S. 23:1021(6) does not operate in this case to afford workers’ compensation benefits by the Fair to Higginbottom and his employees. See Franklin v. Checker Cab Company, Inc., 572 So.2d 773 (La.App. 4th Cir.1990).
|7La. R.S. 23:1061, dealing with statutory employment status, provides guidance as to when a contractor’s employee, rather than the contractor himself, may recover under the principal’s workers’ compensation liability. Guidry v. Gueydan Co-op Dryer, Inc., 97-874 (La.App. 3d Cir.12/10/97), 706 So.2d 146, writ denied, 98-1001 (La.5/29/98), 720 So.2d 335. Regarding statutory employers, at the time of this accident, La. R.S. 23:1061(A) provided in pertinent part:
When any person, in this Section referred to as the “principal”, undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person, in this Section referred to as the “contractor”, for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him.... The fact that work is specialized or nonspeeialized, is extraordinary eon-struction or simple maintenance, is work that is usually done by contract or by the principal’s direct employee, or is routine or unpredictable, shall not prevent the work undertaken by the principal from being considered part of the principal’s trade, business, or occupation, regardless of whether the principal has the equipment or manpower capable of performing the work.[2] [Emphasis supplied.]
In Kirkland v. Riverwood International USA, Inc., supra, the Louisiana Supreme Court held that the appropriate standard under this version of La. R.S 23:1061 for determining whether the contract work is part of the alleged principal’s trade, business or occupation is for the court to consider all pertinent factors under the totality of the circumstances. The court stated:
The presence or absence of any one factor is not determinative, and the presence of one factor may compensate for the absence of another. Among those | sfactors to be considered in determining whether a statutory employment relationship exists are the following:
(1) The nature of the business of the alleged principal;
(2) Whether the work was specialized or non-specialized;
(3) Whether the contract work was routine, customary, ordinary or usual;
(4) Whether the alleged principal customarily used his own employees to perform the work, or whether he contracted out all or most of such work;
(5) Whether the alleged principal had the equipment and personnel capable of performing the contract work;
(6) Whether those in similar businesses normally contract out this type of work *133 or whether they have their own employees perform the work;
(7) Whether the direct employer of the claimant was an independent business enterprise who insured his own workers and included that cost in the contract; and
(8) Whether the principal was engaged in the contract work at the time of the incident.
The record does not support the argument that the work performed by Higginbottom was part of the Fair’s trade, business, or occupation, so as to make Miller a statutory employee of the Fair. The Fair is a nonprofit organization. Samuel J. Giordano, the president and general manager of the Fair, testified that the organization has 15 full time employees and pays workers’ compensation insurance for those workers. About 200 temporary employees work at the Fair during the fall when the Fair is in progress. They are hired through a temporary employment agency which pays the workers’ compensation insurance for those workers. These employees clean bathrooms and the grounds and otherwise perform the general labor required to operate the fairgrounds as a whole. The nature of the business of the Fair is to organize and present the State Fair of Louisiana for 7 to 10 days every autumn, providing entertainment opportunities to | athe public. To provide entertainment, the Fair leases booths to vendors and exhibitors such as Higginbottom.
Giordano testified that the Fair had no equipment to set up or transport a dunking booth and no Fair employees assisted in setting up Higginbottom’s booth. The Fair did not tell Higginbottom how to operate the booth and had no control over whom he hired. Giordano did not inspect the booth and the Fair had the right to shut the booth down only if it was illegal or unsafe. Further, the operation of the dunking booth was specialized and required Higginbottom’s expertise as a high diver. The work of operating a dunking booth was not routine, customary, ordinary or usual in the business of organizing and producing the Fair. The Fair did not customarily use its employees to operate any of the attractions. Higginbottom was operating an independent business enterprise and carried liability insurance, even though he failed to carry workers’ compensation insurance. The Fair was not involved in the operation of the dunking booth at the time this incident occurred.
Under the factors set forth in Kirkland v. Riverwood International USA, Inc., supra, the Fair was not in the business of actually operating attractions and was not in the business of operating a dunking booth. Its business involved the lease of space to those with traveling attractions. The exhibitors then paid the Fair a portion of the proceeds obtained from the public in exchange for booth space. The Fair did not pay the vendors or exhibitors.
Based upon these facts, the WCJ was not manifestly erroneous or clearly wrong in concluding that Higginbottom’s operation of a dunking booth was not part of the trade, business, or occupation of the Fair and that the Fair was not the statutory employer of Miller.
11f,PENALTIES AND ATTORNEY FEES
Because we reject the plaintiffs claim that she is entitled to workers’ compensation death benefits against the Fair, we also reject the plaintiffs claim that the Fair is liable for penalties and attorney fees.
CONCLUSION
P^or the reasons stated above, we affirm the finding of the workers’ compensation judge rejecting the claims of the plaintiff, Marcie Miller, for workers’ compensation death benefits and penalties and attorney fees against the defendant, the State Fair *134 of Louisiana. Costs in this court are assessed to the plaintiff, Marcie Miller.
AFFIRMED.

. The record lists Duane Miller as the plaintiff in this matter. However, the actual plaintiff is Miller's mother, Marcie Miller.

. Acts 1997, No. 315 amended La. R.S. 23:1061 to overrule the statutory employer tests set forth in Berry v. Holston Well Service, 488 So.2d 934 (La.1986), and Kirkland v. Riverwood International USA, Inc., 95-1830 (La.9/13/96), 681 So.2d 329.- The effective date of the amendment is June 17, 1997, and the amendment is intended to have prospec-live application only. Therefore, the amendment does not apply to this cause of action which arose on November 3, 1996, and Kirkland is applicable. See Watkins v. International Service Systems, 32,022 (La.App.2d Cir.6/16/99), 741 So.2d 171, writ denied, 99-2129 (La. 10/29/99), 749 So.2d 640.