## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-30388

United States Court of Appeals
Fifth Circuit

**FILED**
March 7, 2019

Lyle W. Cayce
Clerk

ALEJANDRO JORGE-CHAVELAS; ALFREDO MORENO-ABARCA,

> Plaintiffs - Appellees

v.

LOUISIANA FARM BUREAU CASUALTY INSURANCE COMPANY;
LOUISIANA FARM BUREAU MUTUAL INSURANCE COMPANY,

> Defendants - Appellants

v.

AMERICAN INTERSTATE INSURANCE COMPANY,

> Intervenor Plaintiff - Appellee

Appeal from the United States District Court
for the Middle District of Louisiana

Before KING, HIGGINSON, and COSTA, Circuit Judges.
GREGG COSTA, Circuit Judge:

Workers' compensation laws strike a statutory bargain between labor and management. They all but guarantee that a worker will recover from an employer for workplace injuries. In exchange for that certainty, the worker gives up the right to pursue a potentially larger recovery in a tort suit—employers are immune from such claims.

No. 18-30388

These tradeoffs mean that questions about whether the statutory scheme covers an injured worker can cause businesses and workers alike to oscillate between seemingly opposed positions. A worker uncertain about the chances of a tort suit will often seek workers' compensation, prompting the business to argue that the worker does not fall within the statutory protections. If the worker has a strong tort claim, the roles may flip—the business then has an incentive to argue that workers' compensation is the worker's exclusive remedy.

This case is of the latter variety. The insurer of a Louisiana sugarcane farm has raised several arguments that the farm is entitled to statutory immunity from this lawsuit brought by two injured cane planters. Those workers—entitled to a $2.5 million recovery if workers' compensation does not apply—hope to show otherwise.

I.

Alejandro Jorge-Chavelas and Alfredo Moreno-Abarca, Mexican citizens in the United States on work visas, were severely injured while working on a Louisiana sugarcane farm operated by Harang Sugars, L.L.C. Their legs were crushed when a Harang employee drove into the sugarcane cart they were sitting on.

No one disputes that Harang's employee was at fault. Nor does anyone dispute the damages the plaintiffs suffered. Instead, Harang's insurers (collectively "Farm Bureau") contend that Jorge-Chavelas and Moreno-Abarca were Harang's employees, whose injuries are excluded from its general liability policy. Alternatively, Farm Bureau argues that Louisiana workers' compensation laws grant its insured immunity from this suit. Both positions turn on the nature of the plaintiffs' employment. And so we turn to the arrangement between the four main players: Jorge-Chavelas, Moreno-Abarca, their direct employer (Lowry Farms, Inc.), and Harang.

2

No. 18-30388

Lowry plants sugarcane for other farmers. Because the sugarcane planting season is short but labor intensive, farmers prefer to contract out the work rather than hire the necessary short-term workers. Once a farm contracts with it, Lowry sends recruiters to Mexico to find cane planters. Jorge-Chavelas and Moreno-Abarca were two such recruits. Lowry obtained the necessary visas and agreed to pay the workers an hourly rate and provide them housing, transportation to and from the worksite, and workers' compensation insurance. It also explained that the workers would "be required to work all hours as directed by [Lowry's] management personnel."

Harang was one of Lowry's clients. Their contract required Harang to pay Lowry on a per-acre-planted basis, as opposed to per hour worked by a planter.[1] The agreement treated the planters as Lowry's employees, stating that the payments were "for the work performed by Lowry Farms, Inc. workers." While Harang requested 21 workers for the season, it had no role in the selection of those individuals.

Once planting season began, Lowry recruiters became "crew leaders." They oversaw planters in the fields, settled disputes between the planters, communicated with the farmers, reported injuries suffered by the planters to Lowry, and arranged the planters' transportation back to Mexico. They also decided which planters would work on which farms. Crew leaders selected "straw bosses" to be their on-the-ground supervisors during the planting, and these Lowry employees trained the planters. At the end of each week, Harang filled out a time sheet for the planters, but it was the crew leaders' responsibility to report the planters' hours to Lowry. Every week, Lowry paid the planters.

---

[1] Lowry gave Harang the option to pay an hourly rate to use its employees for "General Farm Labor" on days when planting was infeasible. It never did so.

No. 18-30388

On the farms, the planters worked side-by-side with Harang's employees. Harang tractor drivers hauled the sugarcane carts while the Lowry planters followed behind in groups of three, pulling the cane from the carts and planting it in the ground. Harang provided the necessary equipment—the tractors, carts, and sugarcane all belonged to Harang. But it typically did not exert direct control over the planters. If its owner had a problem with the planters' work, he would contact Lowry's office manager, who would contact the crew leader, who would in turn communicate the concern to the planters. And only Lowry could fire its planters—Harang could voice concern about a planter in the hope that Lowry would find a substitute, but it could not terminate his employment.

Harang's management did not believe the planters were its employees. On the day of the accident, after calling emergency services, Harang's owner immediately notified Lowry. When asked why, he replied, "Because that's their employees." Indeed, Lowry's workers' compensation insurer covered plaintiffs' medical expenses.[2]

Jorge-Chavelas and Moreno-Abarca sued Harang in federal district court, invoking diversity jurisdiction. After the court denied competing motions for summary judgment, a stipulated bench trial followed. The parties agreed that Harang was at fault and that total damages would be $2.5 million (the limit of the Farm Bureau policy). The court had to decide the employment status of the plaintiffs and, relatedly, whether Harang was immune from suit. Concluding that the plaintiffs were not Harang's employees and that the workers' compensation laws did not otherwise provide Harang immunity, the

[2] The district court awarded that insurer—intervenor American Interstate Insurance Company—reimbursement for the payments it made to and on behalf of the appellees. American Interstate has informed the court that it too hopes we affirm the judgment below, standing on the arguments plaintiffs make.

No. 18-30388

district court entered judgment in favor of Jorge-Chavelas for $1,937,500 and Moreno-Abarca for $562,500.

## II.

Louisiana law applies in this diversity case. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). Our task is to "determine as best [we] can [how] the Louisiana Supreme Court would decide" it. *Gulf & Miss. River Transp. Co. v. BP Oil Pipeline Co.*, 730 F.3d 484, 488 (5th Cir. 2013) (quotation omitted). When the absence of a controlling high court decision requires us to make an "*Erie* guess" about Louisiana law, we consider many of the same sources we use when guessing the law of other jurisdictions: decisions and reasoning of the state's courts; general rules of the jurisdiction, such as those governing statutory interpretation; and secondary sources like treatises. *Id.* at 488–89. But Louisiana's "civilian methodology" means the pecking order of those sources is different than it is for a common law state. *Boyett v. Redland Ins. Co.*, 741 F.3d 604, 607 (5th Cir. 2014). Louisiana's "Constitution, codes, and statutes" are of paramount importance to its judges. *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003). The doctrine of stare decisis, a creature of common law, is alien to the civilian system. *Boyett*, 741 F.3d at 607. Unlike stare decisis, which can flow from one decision, in the civil system numerous court decisions must agree on a legal issue to establish *jurisprudence constante* (French for constant jurisprudence). And even when that consensus exists in the caselaw, it remains only persuasive authority for the *Erie* guess; "we are not strictly bound" by the decisions of Louisiana's intermediate courts. *Am. Int'l Specialty Lines*, 352 F.3d at 261 (quoting *Transcon. Gas Pipe Line Corp. v. Transp. Ins. Co.*, 953 F.2d 985, 988 (5th Cir. 1992)); *see generally* Alvin B. Rubin, *Hazards of a Civilian Venturer in Federal Court: Travel and Travail on the* Erie *Railroad*, 48 LA. L. REV. 1369 (1988).

No. 18-30388

A.

The primacy of legislation under the civil law tradition guides our analysis of the question Farm Bureau's primary argument poses: Does Louisiana's choice to extend workers' compensation—usually reserved for employees—to one class of independent contractors apply to the *employees* of those independent contractors and thus immunize Harang from this suit?

As noted above, workers' compensation laws are a statutory compromise granting employers immunity from negligence suits[3] in exchange for their guaranteeing a lesser recovery for on-the-job injuries.[4]  Within that general framework, states have experimented with the scope of both the coverage and the immunity.   It is no different in Louisiana.   For instance, although independent contractors generally are excluded from Louisiana's workers' compensation regime, there is an exception.   Section 23:1021(7)[5] of Louisiana's Revised Statutes states:

> "Independent contractor" means any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or as a whole, under the control of his principal as to results of his work only, and not as to the means by which such result is accomplished, and are expressly excluded from the provisions of this Chapter unless a substantial part of the work time of an independent contractor is spent in manual labor by him in carrying out the terms of the contract, in which case the

---

[3] Immunity does not extend to an employer's intentional torts.  La. Rev. Stat. Ann. § 23:1032(B).

[4] Among other limits, two potentially sizable categories of damages—pain and suffering and punitive damages—are not recoverable in Louisiana as workers' compensation. Those benefits are limited to three types of loss: a partial compensation for lost wages, *see* La. Rev. Stat. Ann. § 23:1221(1)–(3), medical expenses, *id.* § 23:1203, and so-called "schedule" losses compensating for particular disfigurements, *id.* § 23:1221(4)(a)–(r); *see also* 13 H. ALSTON JOHNSON III, LA. CIV. LAW. TREATISE, WORKERS' COMPENSATION LAW AND PRACTICE § 271 (5th ed. 2018).

[5] We note, to avoid confusion, that changes to the Louisiana workers' compensation laws moved this provision from its previous position in section 1021(6) to section 1021(7). Some cases discussed in this opinion cite the older section.

independent contractor is expressly covered by the provisions of
this Chapter.

In other words, an independent contractor who is engaged primarily in manual labor has a claim for workers' compensation against his principal. More importantly to Farm Bureau, that principal is immunized from a negligence suit. La. Rev. Stat. Ann. § 23:1032.

Farm Bureau maintains that this statute applies not just to independent contractors, but also to the employees of independent contractors. In this case, that would mean that the principal (Harang) is immune from suit by the employees (Jorge-Chavelas and Moreno-Abarca) of the principal's independent contractor (Lowry).

The text of the statute says otherwise, and that is where we must begin. *See 84 Lumber Co. v. Cont'l Cas. Co.*, 914 F.3d 329, 334 (5th Cir. 2019) (explaining that, in Louisiana, "[w]hen a law is clear and unambiguous . . . it shall be applied as written") (quotation omitted). Section 1021(7) excludes most independent contractors from the workers' compensation regime. But it grants coverage to contractors who spend a "substantial part" of their time providing "manual labor." In either situation, the statute addresses only independent contractors.

Farm Bureau's argument that the provision brings plaintiffs under the workers' compensation law fails at this most basic requirement. As the term indicates, an independent *contractor* is "one that contracts" with the principal. *See Contractor*, WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (2002) (also defining "contractor" as "a party to a bargain"). Under this widespread understanding of the term, Jorge-Chavelas and Moreno-Abarca are not Harang's contractors; they never entered into an express or implied agreement with the company. La. Civ. Code Ann. art. 11 ("The words of a law must be given their generally prevailing meaning."). A common example illustrates

this.  Assume a homeowner hires a pest control company to exterminate bugs. The company becomes the homeowner's contractor.  But that typically does not result in an agency relationship between the homeowner and the employee of the pest control company.

Other language in section 1021(7) confirms that the statute is referring to "independent contractor" in this ordinary sense of the term—one who has a contractual relationship with the principal.  The statute excepts only an independent contractor for whom a substantial part of his work is "spent in manual labor *by him* in carrying out the terms of *the contract.*"  (emphases added).  And the relevant contract is one "for a specified recompense for a specified result either as a unit or as a whole."  But, as in this case, the employees of an independent contractor are typically not parties to "the contract," which would be between the principal and the contractor.

What little guidance we have from the Supreme Court of Louisiana is consistent with this plain meaning of the statute.  In *Lushute v. Diesi,* the court remarked that the exception was meant to extend to a contractor engaged in manual labor "in carrying out the terms of *his contract with the principal.*"  354 So. 2d 179, 182 (La. 1977) (emphasis added).  This suggests the state high court would adopt this natural reading—that the statute covers only contractors themselves—rather than Farm Bureau's more expansive one.  And that comports with the Louisiana Supreme Court's general approach to workers' compensation laws.  When interpreting the immunity afforded employers, "every presumption should be on the side of preserving the general tort or delictual rights of an injured worker against the actual wrongdoer, in the absence of explicit statutory language limiting or excluding such rights." *Champagne v. Am. Alt. Ins. Corp.,* 112 So. 3d 179, 184 (La. 2013) (quoting *Roberts v. Sewerage & Water Bd. of New Orleans,* 634 So. 2d 341, 346 (La. 1994)).

8

No. 18-30388

Despite the absence of that necessary statutory command, three Louisiana intermediate court decisions have held or suggested that principals are immune from tort suits brought by their contractors' employees if those employees were engaged in manual labor. In *Lumar v. Zappe Endeavors, L.L.C.*, an employee of an independent contractor sued his employer's principal in tort. 946 So. 2d 188 (La. App. 5 Cir. 2006). Louisiana's Fifth Circuit Court of Appeal held that, because a contractor "performs its duties through its employees," the "limitations applicable to [the contractor] are also applicable to its employees." *Id.* at 191. Two other courts relied on *Lumar* not to immunize an employer, but to find a contractor's employee was entitled to recover workers' compensation from the contractor's principal. *Courtney v. Fletcher Trucking*, 111 So. 3d 411, 418 n.6 (La. App. 1 Cir. 2012); *Moss v. Tommasi Constr., Inc.*, 37 So. 3d 492, 499 (La. App. 3 Cir. 2010).

Three decisions do not *jurisprudence constante* make. That is especially true when the court that first announced the rule Farm Bureau presses us to adopt declined to follow it just three years later. In *Daigle v. McGee Backhoe & Dozer Service*, the Fifth Circuit Court of Appeal denied a claim for workers' compensation brought by an independent contractor's employee against the contractor's principal. 16 So. 3d 4 (La. App. 5 Cir. 2009). As a dissent in that case pointed out, following *Lumar* would have made the contractor's employee eligible for workers' compensation under section 1021(7).[6] *Id.* at 8 (Winsberg, J., dissenting). The majority instead suggested that an employee of a contractor is eligible for workers' compensation against his employer's principal, if at all, through a separate provision, section 23:1061, which defines "statutory employment." *Id.* at 7. That statute authorizes, in certain

---

[6] The plaintiff in *Daigle* made the same point, albeit without citing *Lumar*. Original Brief of Eddie Daigle, *Daigle v. McGee Backhoe & Dozer Serv.*, 16 So. 3d 4 (La. App. 5 Cir. 2009), 2008 WL 5478293, at *7–8.

circumstances, a claim for workers' compensation by a contractor's employee against the contractor's principal "**as if** he were [that] principal's employee." 13 H. ALSTON JOHNSON III, LA. CIV. LAW. TREATISE, WORKERS' COMPENSATION LAW AND PRACTICE § 121 (5th ed. 2018) (emphasis in original).

Other Louisiana courts have likewise analyzed cases like this one through the lens of statutory employment, explaining that section 1061 "provides guidance as to when a contractor's employee, rather than the contractor himself, may recover under the principal's workers' compensation liability." *Miller v. Higginbottom*, 768 So. 2d 127, 132 (La. App. 2 Cir. 2000); *see also Prejean v. Maint. Enters., Inc.*, 8 So. 3d 766, 770 (La. App. 4 Cir. 2009); *Poirrier v. Cajun Insulation, Inc.*, 459 So. 2d 737, 738–39 (La. App. 4 Cir. 1984). Louisiana's leading workers' compensation treatise agrees that statutory employment is the proper framework for analyzing whether the employee of an independent contractor can recover workers' compensation from the principal. *See* JOHNSON III, *supra* § 82 (noting the contractor's pursuit of compensation would be analyzed under section 1021(7) while his employee "must seek compensation under the different test of [section] 1061").

That makes sense as the terms of the statutory employment statute directly address the employee-of-an-independent-contractor situation we confront. When applicable, workers' compensation is the exclusive remedy for a contractor's employee against the principal. La. Rev. Stat. Ann. § 23:1061(A)(1). The catch is that the relationship must be formed by contract. *Id.* § 23:1061(A)(3).[7] No such contract exists in this case, which explains why Farm Bureau does not seek section 1061's help. But the existence of this

---

[7] There is another way to create the statutory employment relationship known as the "two contract" theory, but it is not applicable to this case. La. Rev. Stat. Ann. § 23:1061(A)(2); *see also Allen v. Ernest N. Morial-New Orleans Exhibition Hall Auth.*, 842 So. 2d 373, 379 (La. 2003).

express avenue for employees of contractors to seek workers' compensation from a principal (and in turn for those principals to seek immunity) further supports limiting section 1021(7) to independent contractors themselves, not their employees. La. Civ. Code Ann. art. 13 ("Laws on the same subject matter must be interpreted in reference to each other."); *Fontenot v. Reddell Vidrine Water Dist.*, 836 So. 2d 14, 28 (La. 2003) ("It is a fundamental rule of statutory construction that when two statutes deal with the same subject matter, the statute specifically directed to the matter at issue must prevail as an exception to the more general statute.").

Sections 1021(7) and 1061 are both deviations from typical workers' compensation principles, but they serve different purposes. Section 1021(7) protects a specific class of independent contractors who would not otherwise be entitled to benefits. It was added because, when it came to manual laborers, the "distinction between contractor and employee had become so tenuous and so difficult to administer that the cases were in a state of almost hopeless confusion, and many injustices were apparent." JOHNSON III, *supra* § 78. To settle the seemingly interminable debate, the Louisiana legislature resolved that those who contracted to do manual labor were entitled to benefits, no matter what a multifactor test said about their relationship to the principal. *Id.*

Section 1061 addresses a different concern—contractors who lack the assets to pay workers' compensation. To encourage principals to hire solvent contractors, the statute offers them a choice. If a principal enters into a statutory employment contract, in exchange for assuming workers' compensation liability, it obtains two benefits: 1) tort immunity from the contractor's employees; and 2) indemnification from the contractor if those employees recover workers' compensation from the principal. *See* La. Rev. Stat. Ann. § 23:1061(B). Not a bad option if you hire a solvent contractor (but

if the contractor is insolvent, indemnification won't help). Or those principals can choose to forego immunity if they would rather limit their vulnerability to workers' compensation claims. So, although "[o]rdinarily a principal is not and should not be subjected to the compensation claims of his contractor's employees," statutory employment uses the promise of immunity and indemnification to encourage principals to agree otherwise. JOHNSON III, *supra* § 78; *see also id*. at § 121 (noting that the interposition of a contractor between the principal and the contractor's employees "would not deprive the employee of protection so long as the intermediary contractor was solvent or protected by insurance").

This statutory employment law that targets the employment relationship we confront, together with the ordinary meaning of section 1021(7), tangential but informative guidance from Louisiana's highest court, and the view of a leading authority on Louisiana workers' compensation law, trumps a handful of decisions from intermediate state courts, one of which has backtracked from its earlier view. The district court's *Erie* guess is a solid one.[8] Section 1021(7) does not obligate a principal to provide workers' compensation to the employees of its independent contractors, so it does not afford Harang immunity from this suit.[9]

---

[8] Farm Bureau asked us to certify this question about the manual labor exception to the Supreme Court of Louisiana. Because our analysis leads us to conclude that the issue is not a close one, we decline that invitation.

[9] Farm Bureau contends that our interpretation of the manual labor exception threatens to "obliterate" its role within Louisiana's workers' compensation regime. But we do nothing to displace that statute where its text says it applies—when an independent contractor *herself* is primarily engaged in manual labor. If anything, it is Farm Bureau's reading of the manual labor exception that threatens to displace the role of another statute. If employees of independent contractors engaged in manual labor are automatically entitled to workers' compensation from the principal, that would create a large exception to section 1061's usual rule that a principal is liable for such claims only when a statutory employment relationship is created by contract. La. Rev. Stat. Ann. § 23:1061(A)(3). And

No. 18-30388

B.

Even if plaintiffs are not covered as Harang's independent contractors, Farm Bureau argues that the workers' compensation regime still applies for a more traditional reason: the plaintiffs were Harang's employees. It says that two different provisions treat the plaintiffs as employees.

The parties call the first the "presumed employee" provision. It provides that a "person rendering service for another in any trade[], business[] or occupation[] . . . is presumed to be an employee." La. Rev. Stat. Ann. § 23:1044. Farm Bureau does not dispute the general view of Louisiana courts that this presumption is overcome when the worker lacks an express or implied employment agreement with the business. *See, e.g., Dustin v. DHCI Home Health Servs., Inc.*, 673 So. 2d 356, 359 (La. App. 1 Cir. 1996). Just as we do now, the district court rejected the "presumed employee" argument for immunity on that ground because, as we have already explained, plaintiffs did not have an express or implied agreement with Harang. They are not presumed employees.[10]

---

Farm Bureau's view leads to other interpretive problems. As plaintiffs' counsel noted at oral argument, if an independent contractor like Lowry is engaged primarily in the provision of manual labor, which of its employees are entitled to benefits from the principal? Only those actually engaged in manual labor, or would Harang also be liable to pay workers' compensation to Lowry's office manager?

Nor does our decision render workers' compensation unavailable to the employees of an independent contractor. As in this case, the direct employer (Lowry) is responsible for workers' compensation.

[10] There is a factual and logical flaw with a more nuanced argument Farm Bureau makes under this statute. It contends: 1) that the presumption of employee status is overcome if the worker is an independent contractor, *see Hillman v. Comm-Care, Inc.*, 805 So. 2d 1157, 1161 (La. 2002), but 2) section 1021(7) explicitly includes independent contractors engaged primarily in manual labor in Louisiana's workers' compensation regime, and 3) Jorge-Chavelas and Moreno-Abarca were engaged in manual labor, so 4) they are presumed employees. This syllogism falls apart at step two. Section 1021(7) does not bring manual laborers back under the presumption. That is because it does not render manual laborers *employees*—it just entitles those independent contractors to workers' compensation from their principal. JOHNSON III, *supra* § 74. In any event, we have already held that

13

No. 18-30388

C.

Farm Bureau's final recourse is to characterize the plaintiffs as Harang's borrowed employees.   Louisiana makes borrowing employers ("special employers" in civil law lingo) and lending employers ("general employers") liable "jointly and in solido to pay" workers' compensation for injuries suffered by a borrowed employee.  La. Rev. Stat. Ann. § 23:1031(C).  In exchange for that joint liability to pay workers' compensation, both the special and general employer are immune from negligence suits.  *Id.*

The borrowed servant doctrine arises in many areas, with some of its deepest roots in maritime law.  *See Standard Oil v. Anderson*, 212 U.S. 215 (1909).  When applying the Louisiana workers' compensation version, courts use either a nine- or ten-factor test to determine whether a borrowed employment relationship exists.   The two tests are essentially identical. *Compare McGinnis v. Waste Mgmt. of La., L.L.C.*, 914 So. 2d 612, 616 (La. App. 2 Cir. 2005) (describing nine-factor test), *with Billeaud v. Poledore*, 603 So. 2d 754, 756 (La. App. 1 Cir. 1992) (describing ten-factor test).  The district court applied the ten-factor test, but under either one and under any standard of review[11] the result is the same: Jorge-Chavelas and Moreno-Abarca were not borrowed employees.

First and foremost, Lowry at all times controlled its planters.  *See Lastie v. Cooper*, 167 So. 3d 150, 153 (La. App. 5 Cir. 2014).  It chose which planters

---

plaintiffs are not Harang's independent contractors.  They are further removed as the employees of Harang's independent contractor.

[11] Farm Bureau contends that we should review the district court's ruling on this question de novo, while the plaintiffs instead believe the proper standard is clear error.  They are both right.   While ultimately the plaintiff's "borrowed servant status is a legal issue" reviewed de novo, the factors considered in making that determination are "factual" and their application is reviewed for clear error.  *Sanchez v. Harbor Const. Co., Inc.*, 968 So. 2d 783, 786 (La. App. 4 Cir. 2007); *see also Capps v. N.L. Baroid-NL Indus., Inc.*, 784 F.2d 615, 617 (5th Cir. 1986) (explaining that a "district court decides the borrowed employee issue as a matter of law," but characterizing the factors as "factual ingredients").

went to which farms, planters were required "to work all hours as directed by [Lowry] personnel," and Harang's owner himself admitted he could not control the planters. There was no agreement recognizing a borrowed employment relationship, the planters never acquiesced to being borrowed employees, Lowry maintained a close relationship with the planters throughout the season, only Lowry could fire the planters, and it—not Harang—was obligated to pay them. The only factors weighing in favor of a borrowed employment relationship—that the planters were doing Harang's work for which Harang provided the tools—do not overcome the number and importance of the factors weighing against it. We therefore also reject Farm Bureau's contention that Harang was a borrowing employer.

***

Plaintiffs were neither employees of Harang nor its independent contractors. Instead, they were employees of Harang's independent contractor. That means Harang enjoys no immunity from suit.

The judgment is AFFIRMED.