# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 15, 2025

Lyle W. Cayce
Clerk

_____

No. 25-30085

_____

Santo Guerrera,

*Plaintiff—Appellant*,

*versus*

United Financial Casualty Company; Rasier, L.L.C.;
Uber Technologies, Incorporated,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:24-CV-1354

_____

Before King, Jones, and Wilson, *Circuit Judges*.

Per Curiam:

Santo Guerrera sued Uber, its subsidiary, and its insurer, seeking compensation under their uninsured motorist policy for damages sustained in a hit-and-run, rear-end accident that occurred while Guerrera was an Uber passenger. Upon the defendants' respective motions, the district court dismissed with prejudice all of Guerrera's claims against them, holding that Louisiana statutes permit transportation network companies, like Uber, to reject uninsured and underinsured motorist coverage and that Uber and the subsidiary properly did so reject. Guerrera timely appeals and asks us to

No. 25-30085

certify the question to the Louisiana Supreme Court or reverse the district court. For the following reasons, we AFFIRM the judgment of the district court and DENY the motion to certify the question.

## I.

During Mardi Gras season in Louisiana, Santo Guerrera summoned an Uber[1] ride via the Uber application. During the ride, another vehicle, driven by an unidentified driver, allegedly struck the Uber vehicle and fled the scene. Guerrera alleges that he suffered bodily injuries as a result of the accident.

To recover damages for his injuries, Guerrera filed suit in Louisiana state court, originally identifying United Financial Casualty Company ("UFCC") as the sole defendant. In his original petition, he alleged that "the sole and proximate cause of the accident was the negligence of an unknown driver," but because UFCC allegedly "provided, or was required by law to provide, a policy of uninsured motorist insurance coverage" to the Uber vehicle, UFCC was liable for the damages he suffered. Guerrera subsequently amended his petition in state court to add Uber Technologies, Inc. ("Uber") and its wholly-owned subsidiary, Rasier, LLC ("Rasier"), as defendants. Against Uber and Rasier, Guerrera alleged that, even though they "were required by law to provide a policy of uninsured/underinsured motorist insurance coverage," they rejected it in violation of Louisiana law. With Uber's and Rasier's consent, UFCC removed the case to the Eastern District of Louisiana, properly invoking diversity jurisdiction.

A flurry of motions followed. As relevant here, Guerrera moved for summary judgment; Raiser and Uber moved to dismiss under Federal Rule

---

[1] Uber is a "transportation network company" ("TNC") that facilitates rideshare services between drivers and passengers via a mobile phone application.

No. 25-30085

of Civil Procedure 12(b)(6); UFCC moved for summary judgment; and Guerrera moved to certify a question to the Louisiana Supreme Court. The principal and dispositive issue in all those motions boiled down to the question before us: whether Uber and Rasier, as TNCs, were permitted under Louisiana law to reject uninsured and underinsured motorist ("UM") coverage.[2]

The district court answered that in the affirmative. It accordingly (1) granted Rasier and Uber's motion to dismiss; (2) granted UFCC's motion for summary judgment; (3) denied Guerrera's motion for summary judgment; and (4) denied as moot Guerrera's motion to certify the question to the Louisiana Supreme Court. Guerrera timely appealed.

Because the issue has not been addressed by the Louisiana Supreme Court or this court, Guerrera again moved on appeal to certify the question to the Louisiana Supreme Court. Uber, Raiser, and UFCC responded in opposition. That motion has been carried with the case, and we consider it below.

## II.

We review a district court's grant of a Rule 12(b)(6) motion to dismiss, grant of summary judgment, and issues of statutory interpretation *de novo*. *White v. U.S. Corrections, L.L.C.*, 996 F.3d 302, 306 (5th Cir. 2021) (Rule 12(b)(6) dismissal); *Romero v. City of Grapevine*, 888 F.3d 170, 175 (5th Cir. 2018) (summary judgment); *United States v. Lauderdale Cnty.*, 914 F.3d 960, 964 (5th Cir. 2019) (statutory interpretation).

_____

[2] Guerrera does not dispute that Uber and Rasier did in fact purport to reject UM coverage. The issue is only whether they were permitted to do so.

3

In this diversity case governed by Louisiana law, *de novo* review does not mean we write on a blank slate. "In determining Louisiana law, we 'should first look to final decisions of the Louisiana Supreme Court.'" *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018) (quoting *Howe ex rel. Howe v. Scottsdale Ins. Co.*, 204 F.3d 624, 627 (5th Cir. 2000)). "To the extent the supreme court has not resolved an issue, then we must make an *Erie* guess and determine as best we can what the Louisiana Supreme Court would decide." *Id.* (citation modified). In doing so, "we consider many of the same sources we use when guessing the law of other jurisdictions: decisions and reasoning of the state's courts; general rules of the jurisdiction, such as those governing statutory interpretation; and secondary sources like treatises." *Jorge-Chavelas v. La. Farm Bureau Cas. Ins. Co.*, 917 F.3d 847, 850–51 (5th Cir. 2019).

Under Louisiana's "civilian methodology," "Louisiana's 'Constitution, codes, and statutes' are of paramount importance to its judges." *Id.* at 851 (quoting *Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co.*, 352 F.3d 254, 260 (5th Cir. 2003)). So while the doctrine of stare decisis "is alien to the civilian system," *id.*, in the absence of Louisiana Supreme Court decisions, intermediate state court decisions provide "dat[a] for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise," *Renwick*, 901 F.3d at 611.

With these principles in mind, we turn to the statutes at issue because "the interpretation of any statutory provision starts with the language of the statute itself." *Caldwell Par. Sch. Bd. v. La. Mach. Co., L.L.C.*, 110 So. 3d 993, 996 (La. 2013).

No. 25-30085

Louisiana Revised Statute § 45:201.6 imposes insurance requirements on TNCs:

> A. A transportation network company driver or a transportation network company on the driver's behalf shall maintain primary automobile insurance that meets the requirements of this Section.
>
> . . .
>
> C. Automobile insurance during a prearranged ride shall:
>
> > (1) Be in the amount of not less than one million dollars for death, bodily injury, and property damage.
> >
> > (2) *Include uninsured and underinsured motorist coverage to the extent required by R.S. 22:1295.*

LA. REV. STAT. § 45:201.6 (emphasis added). The emphasized provision is at issue in this appeal.

The referenced statute, § 22:1295, is Louisiana's generally-applicable statute regulating UM coverage. *See* LA. REV. STAT. § 22:1295. It requires that all automobile liability insurance issued in the state for cars designed for use on public highways and registered in the state also contain UM coverage "not less than the limits of bodily injury liability provided by the policy." *Id.* § 22:1295(1)(a)(i). "[H]owever, the coverage required under this Section is not applicable when any insured named in the policy either rejects coverage, selects lower limits, or selects economic-only damage." *Id.* And subsection (ii) provides the manner by which insureds can reject UM coverage, select lower limits, or select economic-only coverage. *Id.* § 22:1295(1)(a)(ii).

Guerrera reads § 45:201.6 to import only the minimum-UM-coverage-amount requirement of § 22:1295—"not less than the limits of bodily injury liability provided by the policy." *See id.* § 22:1295(1)(a)(i). Under his reading, the rejection provisions of § 22:1295 do not carry over, and TNCs are not permitted to reject UM coverage. Conversely, Uber,

5

Rasier, and UFCC (the "Appellees") argue that the clause "to the extent required by R.S. 22:1295" wholly incorporates by reference that referenced statute, which, in turn, allows UM coverage to be rejected. That is, if UM coverage is not required under § 22:1295 (because it was rejected via the required process), then so too under § 45:201.6, which requires UM coverage only to that extent.

We agree with the Appellees. To start, Guerrera's reading has no basis in the statute. Rather than reading it as it is written—without qualifications as to which parts of § 22:1295 it adopts—he would have the court read *into* § 45:201.6 an atextual qualification that TNCs must maintain UM coverage "to the extent required by *the UM-coverage-amount provision, but no other, of* R.S. 22:1295." That is not what the statute says. It simply says the UM coverage requirement under § 45:201.6 is coextensive with that under § 22:1295, including the ability to reject it.

Our reading comports with Louisiana's statutory interpretation rules. "[L]aws previously enacted by [the Louisiana] Legislature, and in force at the time of the enactment of a new law, may be incorporated into the new law by a mere general reference to the existing laws in the new statute." *Davenport v. Hardy*, 349 So. 2d 858, 861 (La. 1977). This is precisely what happened here. Section 22:1295 was in force at the time of the enactment of § 45:201.6, and § 45:201.6 makes a general, unqualified reference to that existing law. Section 22:1295, therefore, is incorporated into § 45:201.6. Accordingly, the most faithful reading of the statute is to simply superimpose the requirements of § 22:1295 onto § 45:201.6—including the rejection clause. In other words, TNCs are required to maintain UM coverage in the minimum amount specified in § 22:1295, but they may also reject such coverage, so long as they follow the specified procedure outlined therein.

No. 25-30085

Other statutes also support this reading. Consider Louisiana Revised Statute §§ 45:200.1–17, which regulate the insurance obligations of an analogous industry—taxicabs. As Guerrera concedes, the legislature did not require taxicabs to maintain UM coverage. *See* La. Rev. Stat. § 45:200.4 (requiring only liability insurance). In fact, the legislature expressly stated that all other "applicable laws . . . relating to the ownership, registration, and operation of automobiles in the state" still apply. *Id.* § 45:200.11. Section 22:1295 is one such law that relates to the ownership and operation of automobiles in the state. And thus, for taxicabs, the legislature did not require separate UM coverage, resting on § 22:1295 as the default UM-insurance regulation. Same here. The legislature also did not find it necessary to impose separate UM-coverage obligations on TNCs, which offer similar services as taxicabs, and decided instead to rest on § 22:1295 as the default UM-insurance regulation.

Nor did the legislature find TNCs any more dangerous to the public welfare than taxicabs to impose additional insurance obligations. We know this because the respective findings and declarations of policy for TNC- and taxicab-insurance statutes are virtually identical. *Compare* La. Rev. Stat. § 45:201.6 *with* La. Rev. Stat. § 45:200.1. If the legislature, based on identical policy considerations, chose not to mandate UM coverage for taxis, it seems unlikely that it chose to mandate it as to TNCs. And this conclusion makes sense, because the legislature focused on protecting the public from the "operation" or "provision" of these services. *See id.* § 45:201.6; § 45:200.1. UM coverage, on the other hand, protects the public from the actions of *others*, not necessarily of taxicabs or TNCs.

The only Louisiana appellate court to have considered the issue affirmed this reading twice over. *See Jean v. James River Ins. Co.*, 274 So. 3d 43 (La. Ct. App. 4th Cir. 2019), *writ denied*, 280 So. 3d 160 (La. 2019); *Willie*

7

*v. Nguyen*, No. 2023-0458 (La. Ct. App. 4th Cir. 2023), *writ denied*, 373 So. 3d 440 (La. 2023).

In *Jean*, the plaintiff–appellant was driving for Uber when she was struck by an underinsured driver. 274 So. 3d at 44. She then filed a claim with Uber's insurer for underinsured motorist coverage, but her claim was denied because "underinsured motorist benefits had been waived by" Uber. *Id.* at 45. Like here, the plaintiff–appellant there argued that Uber was not permitted to reject such coverage, but the trial court disagreed, granting summary judgment against the plaintiff–appellant. On appeal, the court affirmed, holding that "La. [R.S.] 45:201.6 read *in para materei* [sic] with La. R.S. 22:1295(1)(a)(i)–(ii) permits Uber to waive underinsured motorist coverage." *Id.* at 46. And *Jean* was reaffirmed in *Willie*, which held that because § 22:1295 allows rejection of UM coverage, it preempts a New Orleans ordinance that required $1,000,000 in UM coverage.

In the absence of Louisiana Supreme Court decisions, intermediate appellate state court decisions such as these provide "dat[a] for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Renwick*, 901 F.3d at 611. And, as explained in more detail below, Guerrera fails to point to "other persuasive data" that compels us to disregard these decisions.

Therefore, the plain text of the statute, rules of statutory interpretation, other statutes regulating a similar industry based on the same policy considerations, and the decisions of the only state appellate court to address the issue all lead to the conclusion that the Appellees' reading of the statute is correct: they are permitted to reject UM coverage as long as they do so in accordance with the procedure set out in § 22:1295. But Guerrera makes five arguments to the contrary. They all fail.

*First*, he argues that the reading we adopt today would lead to absurd results. And it is true that we do not apply the law as written if "its application [would] lead to absurd consequences." *See Caldwell*, 110 So. 3d at 996. Guerrera's argument goes like this. The only entities required to provide UM coverage under § 22:1295 are insurance companies, of which TNCs are not one. Thus, § 22:1295's "UM mandate does not apply to Uber in any sense." So to hold that Uber "has to provide UM coverage 'to the extent required by R.S. 22:1295' . . . would [mean] no UM coverage at all." This, per Guerrera, is absurd because "[t]he legislature did not impose a UM mandate on TNCs that, when applied literally, means TNCs are not required to provide UM coverage."

This argument rests on two faulty premises—that § 45:201.6 requires TNCs to *provide*, rather than *maintain*, UM coverage and that § 22:1295 regulates only insurance companies. When read correctly, the statute requires TNCs to *maintain* UM coverage, not become insurers for their passengers: "A [TNC] driver or [TNC] on the driver's behalf *shall maintain* primary automobile insurance that meets the requirements of this Section." La. Rev. Stat. § 45:201.6 (emphasis added). Moreover, while it is true that much of § 22:1295 regulates insurance companies, that is not all. It also regulates the conduct of the *insureds* by, among other things, permitting them to reject UM coverage and regulating the means by which to reject it. So it is *not* absurd that "TNCs are not required to *provide* UM coverage" because they were never meant to, and we do not hold today that they must. Nor is it absurd that the legislature would simply rely on a generally-applicable UM statute when regulating TNCs, given that TNC drivers are like any other drivers—laypeople subject to the generally-applicable UM statute anyway.

*Second*, Guerrera argues that, because the legislature specified in § 45:201.6 the coverage amounts for bodily injury and property damage, *see* La. Rev. Stat. §§ 45:201.6(B)(1), (C)(1), it makes sense to conclude that

for UM coverage, the legislature also meant to reference only the coverage amount of § 22:1295, and nothing else. He further contends that the "to the extent" language is there to provide flexibility because if the legislature did not set an amount, TNCs could choose any level they wanted, but if it did set an amount, the coverage would be inflexibly fixed at that amount.

But that the legislature specified the coverage amounts for bodily-injury and property-damage liability coverage, but not for UM coverage, cuts the other way. Indeed, when there is "different language employed by the legislature in the two subsections, [it is] a choice we must presume to have been deliberate." *Mallard Bay Drilling, Inc. v. Kennedy*, 914 So. 2d 533, 549 (La. 2005) (citing *Hall v. Brookshire Bros., Ltd.*, 848 So. 2d 559, 571 (La. 2003)). And Guerrera's reading vitiates that presumption. If the legislature wanted to mandate and specify a minimum UM coverage amount, it simply could have—like it did for liability coverage. Likewise, if the legislature wanted to do so without establishing a fixed ceiling, it could have—like it did for liability coverage. That the legislature did not do so, and instead referenced without qualification § 22:1295, which contains a rejection provision, is a choice we must presume to have been deliberate.

*Third*, Guerrera argues that the legislature's articulated public policy mandates his interpretation of the statute. *See* LA. REV. STAT. § 45:201.6. To be sure, that section makes clear the legislature's concerns about the safety of TNC services. But, as explained above, these policy considerations focus on protecting the public from the actions of the TNCs—from the "provision" of those services. UM coverage, on the other hand, protects the public and TNC users from the actions of *others*. And, again, even based on identical policy considerations, taxicabs are not required to maintain UM coverage, so they cannot be the basis to hold that TNCs are.

*Fourth*, Guerrera contends that, based on the plain text, § 22:1295's rejection clause does not reach outside of that section. Section 22:1295 states that the UM "coverage required *under this Section* is not applicable when any insured named in the policy" rejects it. La. Rev. Stat. § 22:1295 (emphasis added). So, he argues, the UM coverage required under § 45:201.6 is no longer "coverage required under this Section [22:1295]," and thus, the rejection clause is inapplicable to authorize rejection of § 45:201.6-mandated UM coverage.

As explained above, however, the Louisiana Supreme Court instructs that "laws previously enacted by [the] Legislature, and in force at the enactment of a new law, may be incorporated into the new law by a mere general reference to the existing laws in the new statute." *Davenport*, 349 So. 2d at 861. Thus, by a "mere general reference," the legislature incorporated into § 45:201.6 the UM-coverage requirements and rejection procedure of § 22:1295. So incorporated, the clause "coverage required under this Section" can be read as "coverage required under [§ 45:201.6]" for the purposes of this case, allowing rejection of such coverage.

*Fifth*, Guerrera's final argument seems to be that, in some statutes, the legislature did not expressly require UM coverage and was silent on that requirement. *See* La. Rev. Stat. §§ 32:681, 32:900 (motor vehicles generally); § 45:200.4 (taxicabs); § 40:1135.9 (ambulances); § 22:1200.3 (tow trucks); § 45:163 (passenger buses and common and contract carriers). But in others, it expressly required UM coverage. *See id.* § 22:1300.3 (peer-to-peer car sharing programs); § 32:900.1 (carriers of railroad workers). So, the argument goes, if the legislature did not want to impose a UM-coverage requirement, it would have followed the "template" of the other statutes and remained silent. But the fact that the legislature "specifically required TNCs to provide UM coverage" means TNCs fall into the latter category of regulated entities that are subject to UM-coverage requirements.

To start, the second part of that argument is circular and assumes the conclusion. His argument is essentially that *because* TNCs are required to provide UM coverage, that means they must provide UM coverage. That is unpersuasive.

The first part fares no better. Just as the legislature could have remained silent on UM-coverage requirements for TNCs as it has in some other statutes, it could have expressly required UM coverage, like it has in others. Moreover, under those statutes in which the legislature remained silent on UM-coverage obligations, the general UM-insurance statute would govern—§ 22:1295, the same one that is referenced in and incorporated into § 45:201.6. Thus, it appears the legislature *did* in fact follow its template of resting on the generalized UM-insurance statute. Finally, as explained above, the fact that taxicabs—an analogous industry to TNCs—are not required to maintain UM insurance, even though the legislature had identical policy concerns regarding their operation, bolsters the conclusion that TNCs, too, are not required to maintain UM insurance.

## III.

Guerrera has also asked us to certify the question of whether TNCs are permitted to reject UM coverage to the Louisiana Supreme Court. This court has "articulated three factors to consider in deciding whether to certify a question." *McMillan v. Amazon.com, Inc.*, 983 F.3d 194, 202 (5th Cir. 2020). They are: (1) the closeness of the question and the existence of sufficient sources of state law; (2) the degree to which considerations of comity are relevant in light of the particular issue and case to be decided; and (3) practical limitations of the certification process: significant delay and possible inability to frame the issue so as to produce a helpful response on the part of the state court. *Id.* Here, these factors weigh against certification.

*First*, while there is a dearth of authority on this particular issue, for the reasons explained above, the question does not seem close. Indeed, the plain language, rules of statutory interpretation, other statutes, and state court cases all point in one direction.

*Second*, comity considerations do not weigh in favor of certifying the question. Guerrera contends that, because our decision today "will affect an industry that is both pervasive and statewide," this factor cuts his way. While he is no doubt correct that TNCs are pervasive and statewide, only *seven* cases have cited to § 45:201.6, a statute that became effective more than six years ago. *Cf. Sanders v. Boeing Co.*, 68 F.4th 977, 983 (5th Cir. 2023) (finding comity interests counsel in favor of certification because "the issues frequently arise," as evidenced by the fact that "[h]undreds of state-court opinions have cited" the statute at issue). So the industry may be pervasive, but the issue is not. Moreover, the *Sanders* court found significant that "interpretive differences have developed in the federal courts," *id.* at 984, but that is not the case here—every federal district court has reached the same conclusion as we do today. *See Washington v. Uber Techs., Inc.*, No. 22-2078, 2023 WL 3004662, at *2–3 (E.D. La. Apr. 19, 2023); *Ward v. Raiser, LLC*, No. 23-5503, 2024 WL 1435150, at *4–5 (E.D. La. Apr. 3, 2024); *Ward v. Rasier, LLC*, No. 23-5503, 2025 WL 1810159, at *4 (E.D. La. July 1, 2025).

Also important is the fact that the Louisiana Supreme Court has had two opportunities to consider this issue but declined to do so on both occasions. *See Guilbeau v. Hess Corp.*, 854 F.3d 310, 315 (5th Cir. 2017) (denying certification and noting that "although the denial of a writ is not necessarily an approval of the appellate court's decision nor precedential, the Louisiana Supreme Court has had multiple opportunities to consider this issue and has repeatedly declined to do so"). Indeed, even though the issue was squarely lined up in *Jean*, the Louisiana Supreme Court denied the writ. *Jean v. James River Ins. Co.*, 280 So. 3d 160 (La. 2019). And again in *Willie*,

where the state intermediate court expanded its holding in *Jean* to preempt a city ordinance, the supreme court denied the writ. *Willie v. Nguyen*, 373 So. 3d 440 (La. 2023).

*Third*, the concomitant delay in certification is undeniable and unnecessary. True, every certification process will cause some delay, and the issue here is purely legal, able to be framed neatly to the supreme court. But the fact that the question is not a close one and that comity considerations are not implicated indicate that such delay is unwarranted and that this factor is outweighed.

The consideration of these factors, therefore, lead to the conclusion that certification is unwarranted. The motion is accordingly DENIED.

## IV.

For the foregoing reasons, we AFFIRM the judgment of the district court and DENY the motion to certify the question to the Louisiana Supreme Court.