# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**09-1419**

**GERALD MOSS**

**VERSUS**

**TOMMASI CONSTRUCTION, INC., ET AL.**

\*\*\*\*\*\*\*\*\*\*
APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION -DISTRICT # 3
PARISH OF CALCASIEU, NO. 08-3126
SAM L. LOWERY, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*
## ELIZABETH A. PICKETT
## JUDGE
\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks, and Elizabeth A. Pickett, Judges.

**AFFIRMED.**

**Thibodeaux, Chief Judge, concurs in the result.**
**Cooks, J., concurs in the result.**

**Christopher M. Trahan**
**Raggio, Cappel, Chozen & Berniard**
**P. O. Box 820**
**Lake Charles, LA 70602**
**Counsel for Defendant/Appellant:**
    **Donald P. Shaw**

**Foster P. Nash III**
**Degan, Blanchard & Nash**
**400 Poydras St., #2600**
**New Orleans, LA 70130**
**Counsel for Defendant/Appellee:**
    **LEMIC Insurance Company**

**Thomas J. Solari**
**Woodley, Williams, Boudreau**
**P. O. Box 3731**
**Lake Charles, LA 70602-3731**
**Counsel for Defendant/Appellee:**
        **Tommasi Construction, Inc.**

**Gregory P. Marceaux**
**Marceaux Law Firm**
**2901 Hodges St.**
**Lake Charles, LA 70601**
**Counsel for Plaintiff/Appellant:**
        **Gerald Moss**

**PICKETT, Judge**.

The defendant, Don Shaw, appeals a decision of a Workers' Compensation Judge (WCJ) finding him, personally, the employer of the claimant, Gerald Moss, and liable for all compensation benefits plus $6,000.00 in penalties, $17,500.00 in attorney's fees and the interest on all elements of the award. The claimant also appeals, listing five alleged legal errors made by the WCJ. The claimant, further, seeks additional attorney's fees for this appeal. We affirm the decision of the WCJ and award the claimant $4,000.00 in additional attorney's fees for work on this appeal.

## FACTS

The claimant, Moss, who was employed by Leonard Darson, was severely injured when he fell of a scaffold on January 5, 2008, while installing Hardi Plank (a synthetic wood) siding. He had been hired by Darson to install the siding on an apartment complex which was being built by Don Shaw, a Lake Charles businessman. After the accident, Darson disappeared and, as of the trial, was still missing.

In order to build the complex, building permits were required. Shaw, who is not a contractor, and thus, who was unable to obtain the necessary permits, entered into a verbal agreement with a friend, Louis "Tony" Tommasi, owner of Tommasi Construction to "pull" the necessary permits and to "oversee" the project. During the trial of this matter, one of the contested issues was the nature of that agreement. Shaw claimed he hired Tommasi as his general contractor, while Tommasi maintained that he was engaged as a "consultant" to oversee the project and to obtain the needed permits, which could only be obtained by a person/firm holding a general contractor's license. Tommasi and Shaw had collaborated before on several projects. The two

never worked via written contracts, but by verbal agreement. From the depositions of the two men, it appears that Tommasi performed some functions of a general contractor, *i.e.* he obtained the needed permits listing himself as contractor on the project, and he supervised the work of the subcontractors. However, Tommasi neither paid for the building materials nor paid the subcontractors, but rather he verified to Shaw that work had been completed so that Shaw would pay the subcontractors.

Shaw also performed some functions of a general contractor, although he is not licensed as such. Shaw hired all the subcontractors, signed any written contracts that were entered into with the subcontractors (for instance, electrical and plumbing), paid for materials, and paid the subcontractors as Tommasi reported their work was completed.

Neither Shaw nor Tommasi inquired if any of the subcontractors carried workers' compensation insurance. Shaw stated that the "thought didn't cross my mind." Both Shaw and Tommasi were insured by LEMIC Insurance Company—Shaw for his insurance business and Tommasi for his contracting business.

The apartment project was progressing amicably, without incident, until the claimant fell off the scaffold on which he was working, severely injuring his ankle and sustaining additional injuries to his leg and knee.

When the claimant looked to Darson for workers' compensation benefits, it was discovered that Darson had no workers' compensation insurance. Shortly thereafter, Darson disappeared. The claimant then looked to Shaw, Tommasi, and/or LEMIC for benefits. All denied coverage, and this suit commenced.

## ASSIGNMENTS OF ERROR

On appeal Gerald Moss, the claimant, filed two briefs, one as appellant and one as appellee. As appellant, Moss argues the WCJ committed several errors: (1) in not finding Tommasi the general contractor for the project; (2) in not finding Darson, Shaw and Tommasi Construction solidary obligors; (3) in not awarding him an increase of 50% of the indemnity amount as per La.R.S. 23:1171.2; (4) in allowing Shaw to rely on the fee schedule and to pay the medical providers directly; and (5) in not finding that LEMIC Insurance Company provided coverage for this claim. The claimant also seeks additional attorney's fees for work necessitated by this appeal.

As appellee, Moss completely agrees with the WCJ that Darson was his direct employer, but, under the circumstances of this case, Shaw is his employer by law and, as such, is responsible for any sums for which Darson is liable. We agree with Moss's argument as appellee, and we reject most of his arguments as appellant.

Don Shaw also appears as both appellant and appellee. As appellee, he argues that the WCJ was correct in ordering payment of medical expenses to be paid per the fee schedule, directly to the medical providers. As appellant, he argues that the WCJ erred in finding him liable for the benefits owed Moss, in awarding Moss penalties and attorney's fees, and in finding that his workers' compensation policy with LEMIC did not provide coverage for this claim.

We agree with Shaw's arguments as appellee, but we reject his arguments as appellant.

## LAW AND DISCUSSION

The standard of review applicable in workers' compensation cases was set out by our supreme court in *Dean v. Southmark Const.*, 03-1051, p.7 (La. 7/6/04), 879 So.2d 112, 117 (citations omitted), wherein the court stated:

> In worker's compensation cases, the appropriate standard of review to be applied by the appellate court to the OWC's findings of fact is the "manifest error-clearly wrong" standard. Accordingly, the findings of the OWC will not be set aside by a reviewing court unless they are found to be clearly wrong in light of the record viewed in its entirety. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The court of appeal may not reverse the findings of the lower court even when convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. The determination of whether injury occurred in the course and scope of employment is a mixed question of law and fact.

The case before us rests mainly on the conflicting testimony of two of the parties: Don Shaw, the owner and financier of the project, and Tony Tommasi, the owner of Tommasi Construction, Inc. We have no contracts to examine between Shaw, Tommasi, and Darson, and there is no evidence that Darson carried workers' compensation insurance. The record shows that both Shaw and Tommasi carried workers' compensation insurance, Shaw for his insurance business and Tommasi for his construction company.

In *Rosell v. ESCO*, 549 So.2d 840, 844-45 (La.1989) (citations omitted) our supreme court explained the manifest error/clearly wrong standard:

> When findings are based on determinations regarding the credibility of witnesses, the manifest error--clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the

4

witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.

In his reasons for judgment in this case, the WCJ pointed out the following:

[T]he relationship between and among all of these parties here was pretty well understood - or at least was not a point of contention - right up until the time that Mr. Moss fell off the scaffolding seriously injuring himself. At that junction, apparently the principals here, upon facing the prospect of being liable for some very substantial medical and indemnity risk, found themselves in total disagreement as to their respective roles in contractual obligations in relation to one another.

At that point, Shaw took the position that Tommasi was his general contractor, a position which Tommasi vehemently denied. The WCJ found that, based upon testimony and on the facts that Tommasi was only being paid $50,000.00 on a project which cost over one million dollars and that he neither hired nor paid the subcontractors, Tommasi was indeed acting as a consultant, not as a general contractor.

In making his finding on this issue the WCJ stated:

The plaintiff argues that under the "two-contract" provision, Tommasi as the general contractor contracted to do a job for another (in this case, Shaw as the owner). Subsequently, Tommasi contracted with Darson to perform some or all of the work, thus making Tommasi the plaintiff's statutory employer, according to the plaintiff's view.

The problem with this view is that the evidence at trial showed conclusively that Tommasi never contracted with subcontractor Leonard Darson to do anything. Darson was interviewed, hired, negotiated with, and paid by Don Shaw, not Tommasi. The two-contract theory requires just what the name suggests—two contracts, but the two contracts here were effected between Don Shaw and Leonard Darson and subsequently between Darson and his employee, Gerald Moss. Shaw is the proper party to any two-contract configuration. The testimony which was offered at trial bears out this judgment. The following is basically what happened:

5

A well known and widely respected business developer, Don Shaw, asked his long-time business associate, Tony Tommasi, to use his contractor['s] license to get permits for the apartment complex Shaw planned to build. Now, at this point in time, there is no doubt that Tommasi was, in fact, the licensed contractor for the project, in title at least, because that's what the records at City Hall says he was; however, his role as the full-fledged general contractor seemed to have a very short shelf life because once construction began, Don Shaw apparently took the reins fully into his own hands. From all accounts, he did so for the rather practical reason that he had built buildings—large ones in fact—before and he knew the construction business quite well. The testimony indicated that Shaw negotiated with, contracted with, and paid every subcontractor who was on the job site, including Leonard Darson. There is no reasonable way to interpret the evidence except to conclude that for all intents and purposes, Tony Tommasi's functional role was that of an employee, a supervisory employee perhaps, but still an employee of Don Shaw. Plaintiff's argument that somehow Shaw and Tommasi co-hired, for want of a better term, Darson has very little evidentiary foundation.

We agree with the WCJ's finding on this issue. The record supports the conclusion that Tommasi was acting as "a supervisory employee" of Shaw, not as the general contractor on this project. That finding absolved Tommasi and LEMIC, as Tommasi's workers' compensation insurer, from any liability to Moss and precluded a finding of solidarity between Shaw and Tommasi.

That left the question of the liability of Shaw and LEMIC as his workers' compensation insurer. The WCJ found that Shaw acted as the general contractor and that the LEMIC policy issued to Shaw did not contemplate coverage for any construction activities based upon the plain language of the policy and the premium paid. We agree.

In reaching this conclusion that Shaw acted as his own general contractor, the WCJ noted that Shaw "did so for the rather practical reason that he had built buildings—large ones in fact—before, and he knew the construction business quite well. The testimony indicated that Shaw negotiated with, contracted with, and paid

every subcontractor who was on the job site, including Leonard Darson." Thus, the WCJ concluded that Shaw is the "legal" employer of Moss and is responsible for Moss's workers' compensation benefits.

On appeal, Shaw argues that Tommasi, not he, is the responsible party, maintaining that Tommasi is the "statutory employer" of Moss.

The liability for payment of workers' compensation benefits in situations such as this is not crystal clear. We have been unable to find a case directly on point. However, the analysis by our colleagues of the fifth circuit, in a case with similar facts (although seeking different relief), is instructive. In the case of *Lumar v. Zappe Endeavors, L.L.C.*, 06-317 (La.App. 5 Cir. 10/31/06), 946 So.2d 188, the plaintiff, an employee of an independent contractor, sought to recover damages under tort law for injures she sustained in an on-the-job accident, rather than to proceed under workers' compensation law. In granting summary judgment in favor of Zappe, finding that it was liable for workers' compensation and not tort liability, the court stated:

> Aramark, an independent contractor, contracted with Zappe to provide cleaning services for Zappe's manufacturing facility. Plaintiff [Aramark's employee] was in the course and scope of her employment, providing those cleaning services, when she was injured.
>
> LSA R.S. 23:1032 provides that:
>
> A. (1)(a) Except for intentional acts provided for in Subsection B, the rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights, remedies, and claims for damages, including but not limited to punitive or exemplary damages, unless such rights, remedies, and damages are created by a statute, whether now existing or created in the future, expressly establishing same as available to such employee, his personal representatives, dependents, or relations, as against his employer, or any principal or any officer, director, stockholder, partner, or employee of such

7

employer or principal, for said injury, or compensable sickness or disease.

(b) This exclusive remedy is exclusive of all claims, including any claims that might arise against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal under any dual capacity theory or doctrine.

LSA-R.S. 23:1021(7) provides that:

(7) "Independent contractor" means any person who renders service, other than manual labor, for a specified recompense for a specified result either as a unit or as a whole, under the control of his principal as to results of his work only, and not as to the means by which such result is accomplished, and are expressly excluded from the provisions of this Chapter unless a substantial part of the work time of an independent contractor is spent in manual labor by him in carrying out the terms of the contract, in which case the independent contractor is expressly covered by the provisions of this Chapter. The operation of a truck tractor or truck tractor trailer, including fueling, driving, connecting and disconnecting electrical lines and air hoses, hooking [06-317 La.App. 5 Cir. 5] and unhooking trailers, and vehicle inspections are not manual labor within the meaning of this Chapter.

Thus, LSA-R.S. 23:1021(7) allows workers' compensation coverage for a certain type of independent contractor, one who is engaged in manual labor for a substantial part of the work time, and LSA-R.S. 23:1032 allows tort immunity to that type of independent contractor's "employer." As the court noted in *Fleniken v. Entergy Corp.*, 780 So.2d 1175, 95 A.L.R.5th 665, 2000-1824 (La.App. 1 Cir. 2/16/01), *writ denied*, 2001-1268, 793 So.2d 1250 (La.6/15/01), the Legislature has seen fit to extend workers' compensation coverage to certain independent contractors who perform manual labor and that extension of coverage encompasses tort immunity for the employer who contracts with the laborer. Aramark performed cleaning services, which are considered manual labor, and accordingly is immune from tort liability.

*Ms. Lumar* contends that she is not an independent contractor, but *an employee of an independent contractor*, and therefore she is not limited by the exclusivity provisions of the worker's compensation statutes. In finding Ms. Lumar's argument to be without merit, the trial judge said that "The court does not see the distinction being made by plaintiff. Plaintiff *falls within the class of independent contractors*

*contemplated by this statute which perform manual labor, and are therefore covered by worker's compensation.*" We agree with the trial court.

> Aramark performs its duties through its employees, and is liable for the acts of its employees. The limitations applicable to Aramark are also applicable to its employees. Furthermore, LSA-R.S. 23:1021 does not state that it is not applicable to independent contractors who are partnerships, corporations or other juridical persons, and does not limit itself to independent contractors who are natural persons only. Pursuant to LSA-R.S. 23:1021, *plaintiff is entitled to collect worker's compensation benefits*, and is prohibited from filing actions in tort, against Zappe.

*Id.* at 190-91 (footnote omitted; emphasis ours).

The factual relationship vis-a-vis Moss and Shaw and Lumar and Zappe is identical. We agree with the analysis in *Zappe* and find that the analysis in *Zappe* supports the WCJ's conclusion on this issue.

Concerning the issue of a 50% increase in indemnity payments—because La.R.S. 23:1171.2 requires the payment of additional workers' compensation benefits when an employer fails to comply with La. R.S. 23:1168, it is penal in nature and must be strictly construed. *See Williams v. Rush Masonry, Inc.*, 98-2271 (La. 6/29/99), 737 So.2d 41. In this case, Shaw's liability for indemnity payments arises from his solidarity with Darson. If Darson was proven liable for a 50% increase in indemnity payments, then Shaw would be also. However, the record is devoid of any evidence of Darson's status as to workers' compensation insurance. Considering the lack of evidence on this issue we cannot say the WCJ was erroneous in denying increased benefits. *See Savoy v. Clark Directional Drilling Equip.*, 01-918 (La.App. 3 Cir. 12/12/01), 801 So.2d 610.

Shaw also appeals the WCJ's award of penalties and attorney's fees. As to those issues, we turn to the words of Judge Hall, who in *Demery v. Dupree*, 511

So.2d 1268, 1273 (La.App. 2 Cir.)(emphasis ours), *writ denied*,  514 So.2d 456 (La.1987) stated:

> Determination of whether an insured acted arbitrarily, capriciously or without probable cause in refusing to pay benefits is ultimately one of fact and trial court's finding should not be disturbed on appeal absent a showing of manifest error. *Harrison v. Chicago Mill & Lumber Co.*, 446 So.2d 843 (La.App. 2d Cir.1984).

> Failure to pay is not arbitrary, capricious or without probable cause when there existed a serious dispute as to liability. *Schepp v. Olin Corporation*, 445 So.2d 1280 (La.App. 3d Cir.1984), *writ denied*, 448 So.2d 117 (La.1984). *However, a dispute between the statutory and regular employer as to which one owes compensation benefits is not a justifiable basis for withholding benefits from the injured employee.* *Guillot v. Guillot*, 445 So.2d 1270 (La.App. 3d Cir.1984). See also *Fontenot v. Town of Kinder*, 377 So.2d 554 (La.App. 3d Cir.1979), *writ denied*, 379 So.2d 1102 (La.1980).

In the case sub judice, there is no question of liability; Moss was severely injured on the job. The only dispute was which "employer" was going to pay compensation benefits. Either Shaw or Tommasi could have chosen to pay and then third partied the other, but neither did. In his reasons for judgment, the WCJ stated (emphasis ours):

> The evidence here forces the following conclusion: Co-defendant Don Shaw, operating apart and separate from his insurance agency, hired Leonard Darson as a subcontractor on an apartment complex construction project. Darson had no workers' compensation insurance, and far as we can tell no insurance of any sort. Don Shaw's workers' compensation insurance covered strictly and explicitly the clerical workers in his office. That's what the policy plainly says. When plaintiff Gerald Moss was seriously injured, his direct employer, the impecunious and uninsured Darson disappeared, leaving over a quarter of a million dollars in unpaid medical bills.

> It is undisputed that Darson is the direct employer of plaintiff Moss. Louisiana law has long recognized that the principals should ensure that the subcontractors they hire have some means of security to ensure that workers' compensation benefits are paid to injured employees. The facts presented to the court indicated that Don Shaw issued, negotiated with, contracted with, hired and paid Leonard Darson. As such, Don Shaw was Gerald Moss' secondary employer and is

responsible for the medical expenses and any indemnity payments arising out of the accident.

> *There is absolutely no good reason for a worker such as Gerald Moss, as imperfect an individual as he probably is, to find himself totally and completely outside the protection of the workers' compensation system. Apparently, virtually nobody in the management or operation of this construction project checked whether this laborer was covered by a valid workers' compensation insurance program. There were a lot of assumptions, many purely speculative and ill-founded but no effort worthy of note. None of this had to happen. Fixing the situation is going to be far more expensive than the simple steps which could have been taken to prevent it.*

We find no error in the imposition of penalties and attorney's fees.

Moss, as appellant, also seeks the fully payment of all medical expenses directly to him, rather than scheduled expenses awarded directly to the medical providers. We once again turn to the WCJ's reasons for judgment, wherein he stated (emphasis ours):

> There is a great deal of money owed in medical expenses relating to the plaintiff's injury on the job here. Thus far, the total is $269,058.48. Direct employer Darson can't or won't pay these bills, leaving that responsibility to the statutory employer, Don Shaw. However, I disagree with plaintiff['s] counsel who contends that the employer here should not be permitted to take advantage of the fee schedule in these circumstance.
>
> There's both a legal and practical reason for my thinking on this subject.
>
> Plaintiff cites *Smith V. Roy 0. Marin Lumber Company*[, 03-1441 (La.App. 3 Cir. 4/14/04), 871 So.2d 661, *writ denied*, 04-1311 (La. 9/24/04), 882 So.2d 1144], for the proposition that an award of medical benefits is not subject to a reduction in accordance to the reimbursement fee schedule of 23:1034.2 if the employer denies the claim from the beginning, forcing the employee to get treatment on his own.
>
> But my understanding from the jurisprudence is that *this injunction from using the fee schedule is for situations where the claimant has been forced to pay for his own medical treatment. That would seem only just, but that didn't happen here. Nothing has been paid to anybody. All of the bills are still due, and I think it's important to remember that if the fee schedule were applied in this case, the*

*$269,058.48 bill would be considerable less, specifically the bill should be $62,847.46. The term "windfall" comes to mind, especially if the Court were to order the $269,058.48 be paid directly to the plaintiff as counsel urges.*

On appeal, Moss once again relies on the *Smith* case. We find the *Smith* case distinguishable from the case at bar. In *Smith*, the claimant alleged he suffered a herniated disc as he walked up some stairs. He immediately reported the accident and was transported by the company nurse to Louisiana Occupational Health Services. Yet Martco denied the claim from the onset, forcing Smith to fund the costs of medical treatment himself. There was no question as to who was liable for payment of Smith's workers' compensation benefits, Martco (the owner of Roy O. Martin Lumber Company). In the *Smith* case, La.R.S. 23:1142(E) (emphasis ours), which provides: "In the event that *the payor has denied that the employee's injury is compensable under this Chapter*, then no approval from the payor is required prior to the provision of any diagnostic testing or treatment for that injury," was clearly violated. Here, no one *"denied that the employee's injury is compensable under this Chapter*," but rather the dispute was over who was going to pay for the employee's injury. Further, payments of medical expenses had already been made by the claimant in *Smith*. Here, they were not.

We, in agreement with the WCJ, believe that it a better procedure for the workers' compensation insurer to directly pay the health care provider. Not only does this procedure relieve the employee of this burden, but it insures that the employee is not over charged. The employee gets the benefit of the reimbursement schedule envisioned by La.R.S. 23:1034(A), and it insures that the health care provider receives the reimbursement it is due.

12

Finally, we address Moss's request for additional attorney's fees for work necessitated by this appeal. "Because attorney fees were correctly awarded below, failing to award increased attorney fees for the additional work required for this appeal would be inconsistent with that judgment." *Frank v. Kent Guidry Farms*, 01-727, p. 5 (La.App. 3 Cir. 5/8/02), 816 So.2d 969, 973, *writ denied*, 02-1608 (La. 6/27/03), 847 So.2d 1273. Given the number of assignments of error raised by the Shaw and the amount of work Moss's attorney performed in his two capacities, as appellant and appellee, we grant additional $4,000.00 in attorney's fees for work done on this appeal.

Accordingly, for the reasons stated, the judgment of the WCJ is affirmed. Gerald Moss is awarded an additional $4,000.00 in attorney's fees for work done on this appeal. Each party is bear his own costs on appeal.

**AFFIRMED.**