## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 22-134 consolidated with 22-160


DEBRA S. LENOX

VERSUS

CENTRAL LOUISIANA SPOKES,

LLC D/B/A RENEGADE AND ZURICH AMERICAN

INSURANCE COMPANY


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION DISTRICT 02
PARISH OF RAPIDES, NO. 17-01470
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

## SHANNON J. GREMILLION
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion, D. Kent Savoie, and Sharon Darville Wilson, Judges.


**AFFIRMED.**

**Matthew D. Crumhorn**
**Rabalais, Unland, LLP**
**70779 S. Ochsner Boulevard**
**Covington, LA 70433**
**(985) 893-9900**
**COUNSEL FOR DEFENDANTS/APPELLANTS/APPELLEES:**
**Central Louisiana Spokes, LLC**
**Zurich American Insurance Company**

**George C. Gaiennie, III**
**Attorney at Law**
**201 Johnston Street, Suite 101-B**
**Alexandria, LA 71309**
**(318) 704-5784**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
**Debra S. Lenox**

**Christopher J. Roy, Sr.**
**Attorney at Law**
**400 C. Ansley Boulevard**
**Alexandria, LA 71303**
**(318) 446-4242**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
**Debra S. Lenox**

**GREMILLION, Judge.**

The employer and its workers' compensation carrier, Central Louisiana Spokes, LLC, and Zurich American Insurance Company ("Spokes"), appeal the judgment of the Workers' Compensation Judge (WCJ) that awarded the employee, Debra S. Lenox, temporary total disability (TTD) benefits, supplemental earnings benefits (SEB), and medical expenses. That judgment rejected Ms. Lenox's demands for penalties and attorney fees. In the consolidated matter, Ms. Lenox appeals the credit against her medical expenses for the portion paid by her health insurer, the order that Spokes pay those expenses directly to the various healthcare providers, and the rejection of her demand for penalties and attorney fees. Ms. Lenox also answered Spokes' appeal. For the reasons that follow, we affirm the WCJ's judgment.

## FACTS AND PROCEDURAL POSTURE

Ms. Lenox was employed by Spokes at Renegade Harley-Davidson in Alexandria, Louisiana, as its merchandise manager. Her responsibilities included ensuring shelves were stocked, preparing the payroll for merchandising employees, assisting customers, and acting as a cashier. On November 22, 2016, Ms. Lenox testified, she was retrieving some boots from a shelf when she felt "a weird pinch" in her lumbar spine. As the day progressed, Ms. Lenox's pain increased. Her husband advised her to notify Spokes' human resources manager, Ms. Gayle Stolzer, of the incident. Ms. Stolzer directed Ms. Lenox to be seen at Kisatchie Medical Center. Ms. Lenox was diagnosed with lumbar strain and given a cortisone injection. She was discharged home.

That night, her pain became unbearable, and an ambulance took her to Christus St. Francis Cabrini Hospital (Cabrini). Ms. Lenox was initially treated by Dr. Gerald Foret, who referred her case to Dr. Gregory Dowd, a neurosurgeon. Ms.

Lenox gave Dr. Dowd a history consistent with her previous accounts of the incident. She principally complained of lumbar pain radiating into her right leg. While Ms. Lenox did not deny previous low back pain, she denied having pain similar to what she was suffering.

Dr. Dowd initially suspected that Ms. Lenox had a compressed nerve. He ordered an MRI, which was conducted on November 26, 2016. The MRI demonstrated that Ms. Lenox had degenerative changes and facet disease at the L5-S1 level. The following day, Ms. Lenox received an epidural steroid injection at that level, which was performed by a radiologist.

Dr. Dowd intended to discharge Ms. Lenox on November 29, but she began to complain of shoulder pain and pain in other areas of her body. He requested that she be seen by Dr. Hidalgo, a neurologist, who examined Ms. Lenox and thought she needed to be seen by a rheumatologist. There is no indication, though, that a rheumatologist was consulted. Ms. Lenox was discharged from Cabrini on December 1, 2016.

On December 3, 2016, Ms. Lenox was admitted to Rapides Regional Medical Center. She was initially seen by Dr. Dowd's partner, Dr. Lawrence Drerup. Dr. Drerup diagnosed her with right shoulder strain, hyponatremia[1], sepsis, acute kidney injury, pneumonia, urinary tract infection, and lumbar pain with radiculopathy on the left side. An MRI taken that day demonstrated no signs of an infection in Ms. Lenox's lumbar spine.

Dr. Dowd resumed treatment of Ms. Lenox. A third MRI, taken on December 9, did demonstrate a lumbar-spine infection. Dr. Dowd performed surgery to drain an abscess at the L5-S1 level and to decompress the nerves at that level. On

---

[1] Low sodium

2

December 21, Ms. Lenox was transferred to Christus Dubuis Hospital of Alexandria (Dubuis Hospital), an inpatient rehabilitation hospital, where she was treated until February 3, 2017.

Dr. Dowd last saw Ms. Lenox on June 8, 2017. At that time, he released her to sedentary duty. By then, though, Ms. Lenox had been terminated by Spokes. She has not worked since the incident.

Ms. Lenox initiated the present demand for workers' compensation benefits when she filed a Form 1008 Disputed Claim for Compensation, seeking weekly indemnity and medical benefits. Spokes asserted that it paid compensation but only for the initial lumbar injury and asserted that the infection was not compensable. It filed a motion for summary judgment asserting that the infection was not causally related to the lumbar injury. The WCJ heard that motion and granted it. Ms. Lenox appealed that decision, and this court reversed, finding "a genuine issue of material fact as to whether Ms. Lenox's infection was contracted during her course of treatment for her workplace accident". *Lenox v. Central Louisiana Spokes, LLC*, 18-556, p. 7 (La.App. 3 Cir. 2/13/19), 265 So.3d 834, 840.

The case was tried on remand. Ms. Lenox and her husband testified. She introduced a plethora of medical and payroll records, two depositions of Dr. Dowd, and the deposition of Dr. Benjamin Reaves Hogg, the radiologist who interpreted the third MRI. Spokes presented an equally prodigious volume of medical and payroll records, the deposition of Ms. Stolzer, and the report and deposition of Dr. Brobson Lutz, an infectious disease specialist.

When he first saw Ms. Lenox, Dr. Dowd noted that she was experiencing lumbar pain radiating into her right leg. He thought at the time that she had a compressed nerve at L5-S1 caused by a disc protrusion. After the epidural injection, Ms. Lenox experienced relief of her radiating pain. Then she began to complain of

3

pain in other areas, such as her shoulder. By the time Ms. Lenox was seen by Dr. Drerup at Rapides Regional, she was experiencing radiating pain in her left leg. The surgery Dr. Dowd performed at Rapides Regional drained the abscess and decompressed the nerve on the left side, where the infection was located.

Dr. Dowd testified that the progression of imaging studies and the complaints of pain and changes in Ms. Lenox's laboratory studies forced him to conclude that the epidural injection she received at Cabrini "more likely than not" caused her infection. Dr. Dowd was asked about whether a congenital defect in her lumbar spine, an L4-5 pars defect, predisposed Ms. Lenox to an epidural abscess. Dr. Dowd discounted this hypothesis because the infection was not present at the L4-5 level.

Dr. Hogg testified that he not only interpreted the December 9 MRI but reviewed the December 3 study as well. In that six-day interval, the edema around the L5 disc, abnormal signal outside the vertebra itself, and in the spinal canal changed significantly. In particular, the abnormal signal around the spinal canal was not demonstrated at all in the December 3 study. According to Dr. Hogg, it was a "reasonable possibility" that the epidural injection caused the infection.

Dr. Lutz is a board-certified internal medicine doctor with an emphasis on infectious diseases. Prior to entering private practice, Dr. Lutz served as the Chief of Communicable Diseases for the City of New Orleans, then as the Director of the City Health Department. During his career, Dr. Lutz has treated "a couple of dozen" patients with epidural abscesses. Dr. Lutz opined that Ms. Lenox was already in the throes of such an infection when the November 22 incident occurred and that the infection had nothing to do with her on-the-job incident.

Epidural abscess symptoms usually progress in four stages, Dr. Lutz testified: 1) back pain, perhaps with localized fever; 2) radicular pain; 3) frank neurological deficits; and 4) paralysis. In Dr. Lutz's opinion, Ms. Lenox was already in stage 1

4

or perhaps stage 2 when she reported her complaints. He opined that it was "very clear that this was merely the first symptom of a smoldering infectious process."

Dr. Lutz also testified that certain conditions predispose one to developing an epidural abscess. "[I]f somebody has, say, a back abnormality or disc disease or something, that puts them at more risk for staphylococci that are transient[,] circulating in the blood, say, from a little skin cut or — or inapparent boil or something. They go to places like that like a magnet." Ms. Lenox was predisposed to developing an epidural abscess because she had abnormalities in her lumbar spine from an early age, the aforementioned pars defect, as well as disc disease and stenosis. Dr. Lutz had "no doubt" that Ms. Lenox's infection had begun before November 22, 2016.

Dr. Lutz buttressed his opinions with scholarly articles from *The New England Journal of Medicine* and *The Neuroradiology Journal*, which were attached to his deposition as exhibits.

At the close of trial, the WCJ took the matter under advisement. The hearing reconvened when the WCJ delivered oral reasons for ruling. The WCJ recounted the testimonies of all the witnesses. The seventeen-day lapse between the epidural and the diagnosis of an abscess was particularly noted. The WCJ stated that he found it:

> too amazing to the Court to accept the view of Dr. Lutz that after all these years that the staph could have been accumulating in Ms. Lenox's lumbar spine and just somehow by happenstance began to manifest itself and smolder itself the very same day, but not only the very same day, the very same time she picks up a box of boots from the shelf at her place of employment.

The WCJ found that Ms. Lenox proved that the infection was caused by the steroid injection. Ms. Lenox was awarded temporary total disability indemnity of $507.54 per week from November 23, 2016, through June 7, 2017; supplemental

earnings benefits based on a zero earning capacity from June 8, 2017; medical expenses of $189,959.79 paid directly to Rapides Regional; medical expenses of $26,366.06 paid directly to Cabrini; medical expenses of $32,814.15 paid directly to Christus Cabrini Rehab; medical expenses of $139,961.47 paid directly to Dubuis Hospital; and medical expenses totaling $3,868.79 paid directly to "Dr. Robert Dowd." The WCJ also awarded costs, including expert fees. The WCJ rejected Ms. Lenox's prayer for penalties and attorney fees.

## ASSIGNMENTS OF ERROR

Spokes asserts that the WCJ committed the following errors:

1. The Workers' Compensation Judge committed manifest error in finding that Appellee injured her lumbar spine while in the course and scope of her employment.

2. The Workers' Compensation Judge committed an error of law, warranting a de novo review, in finding that Appellee's spinal infection is a compensable injury in accordance with the Louisiana Workers' Compensation Act.

3. The Workers' Compensation Judge committed manifest error in finding that Appellee is entitled to indemnity benefits.

4. The Workers' Compensation Judge committed an error of law, warranting a de novo review, in finding Appellants are responsible for medical bills from Rapides Regional Medical Center, Christus St. Francis Cabrini Hospital, Christus Cabrini Rehab, [Dubuis] Hospital, Dr. [Gregory] Dowd.

In the consolidated appeal, Ms. Lenox asserts the following errors:

No. 1:     The court erred in granting defendants a medical expense offset.

No. 2:     The court erred in failing to order payment of medical expenses directly to plaintiff and instead ordering payment directly to persons not parties to the proceeding.

No. 3:     The court erred in failing to award penalties and attorney fees.

Because Ms. Lenox's assignments of error substantively overlap Spokes' assignments, we will address her assignments of error in this opinion.

6

**ANALYSIS**

*De Novo Review*

While Spokes assigns a legal error warranting de novo review as its second assignment of error, we address this contention first; if de novo review is warranted, a manifest error review is obviated. Of the application of de novo review, the supreme court has held:

> where legal error interdicts the fact finding process, the manifest error standard no longer applies and, if the record is complete, an appellate court should make its own de novo review of the record. However, when the erroneous admission affects only one of several jury findings, each jury finding pertinent to liability must be evaluated to determine the applicability of the manifest error rule to each.

*Lam ex rel. Lam v. State Farm Mut. Auto. Ins. Co.*, 05-1139, p. 3 (La. 11/29/06), 946 So.2d 133, 135-36 (citations omitted). "A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights." *Evans v. Lungrin*, 97-541, p. 7 (La. 2/6/98), 708 So.2d 731, 735 (citations omitted).

The legal error Spokes maintains the WCJ committed was in holding Ms. Lenox to an incorrect standard of proof, i.e., "coincidence." Also, Spokes contends that neither the WCJ nor this court should give any weight to the testimonies of Drs. Dowd and Hogg. Considering those testimonies, Spokes maintains, also constitutes legal error warranting de novo review.

We agree with Spokes that "coincidence" is not an accepted legal standard for determining medical causation. The employee must prove the causal relationship between a work-related accident and her disability by a preponderance of the evidence in a workers' compensation case. *See White v. Fresenius Med. Care*, 01-

7

1023 (La.App. 3 Cir. 12/12/01), 801 So.2d 1239, *writ denied*, 02-138 (La. 3/28/02), 811 So.2d 945.

Taken in isolation, the quotation from WCJ's reasons regarding whether it was "too amazing" to accept Dr. Lutz's opinion about the progression of Ms. Lenox's abscess could be taken as attributing causation of her difficulties to coincidence. But that was certainly not all the WCJ said. He also noted that the expert testimonies were "diametrically opposed one to the other." The WCJ also specifically referenced Ms. Lenox's burden of proving causation by a preponderance of the evidence. This court views the WCJ's statement quoted above as merely another fact that preponderated in Ms. Lenox's favor.

Another error Spokes asserts was the admission of the testimonies of Drs. Dowd and Hogg. At the commencement of trial, Spokes indicated that a motion in limine had been filed to strike the portions of Drs. Dowd's and Hogg's testimonies relating to causation. Such a motion is not found in the record. Nevertheless, the WCJ entertained the motion and denied it.

As noted above, Dr. Dowd was deposed twice. The first deposition was noticed and taken by Spokes. Dr. Dowd was not questioned about his qualifications to render an opinion on causation during that deposition. The second deposition was noticed by Ms. Lenox. As we noted above, Dr. Dowd testified that "more likely than not," the infection resulted from the epidural steroid injection.

The admissibility of expert testimony is governed by La.Code Evid. arts. 701-06. The Code of Evidence begins with the proposition that opinion testimony should be limited to those based upon rational perceptions and helpful to understanding the witness's testimony. La.Code Evid. art 701. However:

> A. A witness who is qualified as an expert by knowledge, skill,
> experience, training, or education may testify in the form of an opinion
> or otherwise if:

8

(1) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(2) The testimony is based on sufficient facts or data;

(3) The testimony is the product of reliable principles and methods; and

(4) The expert has reliably applied the principles and methods to the facts of the case.

La.Code Evid. art. 702(A). In civil cases, an expert may give opinion testimony and his reasons without disclosing the underlying facts. La.Code Evid. art. 705(A). These can be elicited on cross-examination. *Id.* Whether an expert has satisfied the requirements of Article 701(A) is within the sound discretion of the WCJ. *Southern Casing of La., Inc. v. Houma Avionics, Inc.*, 00-1930, 00-1931 (La.App. 1 Cir. 9/28/01), 809 So.2d 1040. "Failure of the witness to qualify as an expert pursuant to the introductory paragraph of C.E. art. 702(A) *or* failure of the testimony to meet any of the indicia of reliability or relevancy set forth in C.E. art. 702(A)(1) through (A)(4) will render the testimony inadmissible." *Blair v. Coney*, 19-795, p. 7 (La. 4/3/20), 340 So. 3d 775, 780.

We find that Dr. Dowd's testimony was admissible on the issue of causation of the infection. Dr. Dowd is an imminently qualified, board-certified neurosurgeon with many years of experience. He has treated other patients who have suffered spinal abscesses. His opinion was based on a number of facts: Ms. Lenox's radiculopathy initially presented as right sided, but after she presented to Rapides Regional, those complaints had shifted to the left side, where the infection was found; the injection brought Ms. Lenox relief from her radicular complaints; the pre-existing pars defect in Ms. Lenox's spine was at the L4-5 level, but the infection was found at the L5-S1 level; while the earlier MRI studies were not performed with contrast, which would have been optimal, they nonetheless did not demonstrate

9

changes that would indicate the presence of an abscess; and, Ms. Lenox's symptoms and laboratory results demonstrated a progression of the infection that Dr. Dowd did not feel was consistent with the infection being present when she first presented to Cabrini. We find that Dr. Dowd's testimony was properly admitted.

Dr. Hogg compared the December 3 and December 9 studies. He found a significant change in the edema around the L5 disc and "abnormal signal outside of the bone itself and with in front part, or anterior part, of the spinal canal that wasn't recognizable" in the December 3 study. Dr. Hogg opined that there was a "reasonable possibility" that the infection was caused by the epidural.

> [W]hen an employee proves that before the accident he had not manifested disabling symptoms, but that commencing with the accident the disabling symptoms appeared and manifested themselves thereafter, and that there is either medical or circumstantial evidence indicating a reasonable possibility of causal connection between the accident and the activation of the disabling condition, the employee's work injury is presumed to have aggravated, accelerated or combined with his preexisting disease or infirmity to produce his disability.

*Walton v. Normandy Vill. Homes Ass'n, Inc.*, 475 So.2d 320, 324-25 (La.1985). This court recently reaffirmed this principal in *Johnson v. Lofton Staffing Servs., Inc.*, 21-761 (La.App. 3 Cir. 5/4/22), 339 So.3d 663. Thus, the WCJ did not err in admitting Dr. Hogg's testimony, either. The probability he assigned to causation goes to the weight that should be accorded his testimony and not its admissibility. We decline to review the matter de novo.

*Compensability of Ms. Lenox's Condition*

In its first assignment of error, Spokes asserts that the trial court manifestly erred in finding that Ms. Lenox injured her lumbar spine in the course and scope of her employment. Spokes argues that Ms. Lenox's accident was unwitnessed, that she was performing no action which should have caused injury, and that Dr. Lutz's

testimony establishes that her lumbar symptoms were caused by the infection that she was experiencing before the incident.

"A worker's testimony alone may be sufficient to discharge this burden of proof, provided two elements are satisfied: (1) no other evidence discredits or casts serious doubt upon the worker's version of the incident; and (2) the worker's testimony is corroborated by the circumstances following the alleged incident." *Bryan v. Allstate Timber Co.*, 98-840, p. 3 (La.App. 3 Cir. 12/16/98), 724 So.2d 853, 855. In the present matter, Ms. Lenox gave testimony that was consistent with the accounts of the event she gave to the various healthcare providers. Ms. Stolzer's testimony about Ms. Lenox's report of the incident was also consistent with these accounts.

The only evidence that contradicts Ms. Lenox's account is Dr. Lutz's testimony. This court recently reiterated an axiom of Louisiana law regarding the trier of fact's willingness to accept or discount the testimony of an expert witness:

> The judge, being the trier of fact, is entitled "to assess the credibility and accept the opinion of an expert just as with other witnesses" and is "to hear and weigh expert testimony in the same manner as any other evidence." *Head v. Head*, 30,585, p. 5 (La.App. 2 Cir. 5/22/98), 714 So.2d 231, 234. As such, "[t]he effect and weight to be given the expert's testimony depends upon the validity of the underlying facts relied upon by the expert, and rests within the broad discretion of the trial judge." *Id.* at 234.

*M.B. v. T.B.*, 21-580, p. 12 (La.App. 3 Cir. 2/23/22)(unpublished opinion). This axiom holds true in weighing the testimony of doctors. *See Doucet v. Hornet Serv. Co.*, 19-212 (La.App. 3 Cir. 11/20/19), 314 So.3d 23, *writ denied*, 19-2022 (La. 2/26/20), ___ So.3d ___.

The standard of review in this matter is manifest error. The Louisiana Supreme Court has stated:

> In Louisiana, appellate courts review both law and facts. La. Const. art. 5, § 10(B). The applicable standard of review for a factual

11

finding is the manifestly erroneous or clearly wrong standard. To reverse a factfinder's determination under this standard of review, an appellate court must undertake a two-part inquiry: (1) the court must find from the record that a reasonable factual basis does not exist for the finding of the trier of fact; and (2) the court must further determine the record establishes the finding is clearly wrong. *Stobart v. State, Dep't of Transp. and Development,* 617 So.2d 880, 882 (La.1993). Ultimately, the issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Id.* If the factual findings are reasonable in light of the record reviewed in its entirety, a reviewing court may not reverse even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Id.* at 882-883. Accordingly, **where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous**. *Id.* at 883.

Nonetheless, where documents or objective evidence so contradict a witness's story, or the story itself is so internally inconsistent or implausible on its face that a reasonable factfinder would not credit the witness's story, a reviewing court may well find manifest error. *Rosell v. ESCO,* 549 So.2d 840, 844–45 (La.1989). **Where such factors are not present, however, and a factfinder's determination is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.** *Id.*

*S.J. v. Lafayette Par. Sch. Bd.*, 09-2195, pp. 12-13 (La. 7/6/10), 41 So.3d 1119, 1127-28(emphasis added).

The WCJ chose to credit Drs. Dowd's and Hogg's testimonies over that of Dr. Lutz. That falls within the WCJ's broad discretion, and we find no abuse of that discretion. Finding no internal inconsistencies between Ms. Lenox's account and the circumstances of the case, we are constrained to find that the WCJ did not manifestly err in its ruling. This assignment of error lacks merit.

Spokes also contends that the WCJ manifestly erred in finding that Ms. Lenox is disabled and awarding her weekly indemnity benefits. It argues that no medical evidence since June 2017 finds that Ms. Lenox cannot work. Further, it argues that when Ms. Lenox was employed at Spokes—which had terminated her—she could call upon the assistance of other employees to lift heavy objects and had access to

an office from which she could perform her supervisory functions.  As of June 2017, Dr. Dowd had opined that Ms. Lenox could perform sedentary work.

The WCJ ruled:

> I concluded Ms. Lenox has established by a preponderance of the evidence ... a connection between her staph infection.  So she is awarded— I think she's also shown by clear and convincing evidence entitlement to temporary total disability from the date of the job accident all the way through June 8th of [2017].
>
> . . . .
>
> The reason June 8th of [2017] is because this is contained in the medical records of Dr. Dowd.  It's contained in Dr. Dowd's deposition which is the deposition— the initial deposition taken May 15th; Dr. Dowd stated— I don't think he had seen Ms. Lenox since February of 2016.  But anyway, in his deposition, he stated that Ms. Lenox was released to work as of June 8, [2017], to sedentary duty.  And by this time, she had been terminated from Spokes Renegade Harley-Davidson, and there's no evidence showing that with a sedentary restriction she could have performed her job duties completely and fully in the soft goods section of the Harley- Davidson store.

The WCJ's finding of disability is reviewed for manifest error.  *Arabie v. City of Eunice*, 629 So.2d 465 (La.App. 3 Cir. 1993).  When the record demonstrates a reasonable basis for the WCJ's ruling, it cannot be reversed.  *Id.*

In his testimony, Dr. Dowd did testify that he was ill-placed to opine as to Ms. Lenox's level of disability given the intervening years since he last saw her.  However, she did have dynamic instability in her lumbar spine.  Assuming that there was no change in her conditions, though, Dr. Dowd would still restrict Ms. Lenox's activities.

Ms. Lenox was discharged from Dubuis Hospital with a wheelchair; however, she prefers to use a walker because she does not wish to be confined to a wheelchair.  She testified that "standing for any length of time" posed the foremost impediment to performing simple activities of daily living.  She is frequently unable to stand erect.

Spokes cites this court's opinion in *White v. WIS Int'l*, 17-132 (La.App. 3 Cir. 10/25/17), 230 So.3d 246, for the proposition that Ms. Lenox has failed to carry her burden of proof because she failed to introduce objective medical evidence of her disability. Indeed, longstanding jurisprudence in this circuit holds that objective expert testimony is required, as the cases cited in *White* illustrate. The WCJ found that Dr. Dowd's testimony satisfied this requirement, and we find no manifest error in that finding. Dr. Dowd gave expert testimony that if her condition had not changed, he would maintain the same restrictions on Ms. Lenox's activities, and Ms. Lenox testified that her condition had not improved. This assignment of error lacks merit.

*Medical Expenses and Offset*

The WCJ awarded medical benefits for Ms. Lenox's treatment by Cabrini, Rapides Regional, Cabrini Rehab, Dubuis Hospital, and Dr. Dowd. Spokes complains that these benefits were improperly awarded because Ms. Lenox's health insurer, United Healthcare, paid benefits on her behalf, and the providers accepted those payments. Spokes also asserts that the WCJ erred in ordering that the benefits be paid directly to the various providers. Spokes bases its argument on La.R.S. 23:1212, which reads:

> A. Except as provided in Subsection B, payment by any person or entity, other than a direct payment by the employee, a relative or friend of the employee, or by Medicaid or other state medical assistance programs of medical expenses that are owed under this Chapter, shall extinguish the claim against the employer or insurer for those medical expenses. This Section shall not be regarded as a violation of R.S. 23:1163. If the employee or the employee's spouse actually pays premiums for health insurance, either as direct payments or as itemized deductions from their salaries, then this offset will only apply in the same percentage, if any, that the employer of the employee or the employer of his spouse paid the health insurance premiums.

> B. Payments by Medicaid or other state medical assistance programs shall not extinguish these claims and any payments made by

14

such entities shall be subject to recovery by the state against the employer or insurer.

"[T]he legislative history of Section 1212 indicates that it was enacted to prevent windfall recovery by employees when an employer and a health insurer paid the same medical expenses[.]" *Olivier v. City of Eunice*, 11-1054, pp. 11-12 (La.App. 3 Cir. 6/6/12), 92 So.3d 630, 638, *writ denied*, 12-1570 (La. 10/12/12), 98 So.3d 874. The legislation recognizes that when the employee has paid premiums for her health insurance, her employer's obligation to pay medical expenses is only extinguished in the percentage the employer paid the health insurance premiums.

Spokes argues that United Healthcare paid medical expenses on Ms. Lenox's behalf and did not intervene in her action, and the providers accepted those payments and have not asserted liens or otherwise demanded payment. Therefore, there is no proof that Ms. Lenox owes any healthcare providers anything for the care she received. Further, La.R.S. 23:1212 provides that this obligation was extinguished. Ms. Lenox argues that no evidence was adduced demonstrating the percentage of her health insurance premiums paid by Spokes.

Ms. Lenox counters that the award of medical expenses is a finding of fact subject to the manifest error rule. Evidence was adduced of the amounts billed by each healthcare provider for whose care Ms. Lenox was awarded expenses. However, she, too, argues that the WCJ erred in awarding those directly to the providers, who were not parties to her action.

Spokes has misconstrued Section 1212. Spokes maintains that to accept the WCJ's interpretation of the statute effectively eliminates the first sentence. On the contrary, we find that Spokes' interpretation effectively writes the remainder of the statute out. Spokes' obligation to reimburse medical expenses is not extinguished when the employee's health insurer, to which the employee has paid some or all of

15

the premiums, pays her healthcare expenses; it is entitled to an offset of those expenses in the same percentage that it paid Ms. Lenox's health insurance premiums. Thus, we reject Spokes' assignment of error asserting that its obligation was extinguished and Ms. Lenox's assignment arguing that Spokes is not entitled to an offset.

Similarly, Ms. Lenox's argument fails. Ms. Stolzer testified to and presented documentary evidence of the fact that Spokes paid 57% of the premiums to United Healthcare. The WCJ properly applied the offset to the documented, related medical expenses.

An employer is required to "furnish" necessary medical treatment for its injured employee. La.R.S. 23:1203(A). "Furnish" is not defined in the Louisiana Workers' Compensation Law. *See* La.R.S. 23:1021. Elsewhere, the Louisiana Workers' Compensation Law refers to "payment" — a term also not defined. References to "payment" arise in the context of weekly indemnity benefits and not in the context of medical benefits. *See, e.g.,* La.R.S. 23:1201.3(A).

The Louisiana Workers' Compensation Law provides no guidance. Awarding medical expenses to the plaintiff directly is neither mandated nor prohibited, and the same holds true for ordering that the expenses be paid directly to the providers. The jurisprudence is split. *Spires v. Raymond Westbrook Logging*, 43,690 (La.App. 2 Cir. 10/22/08), 997 So.2d 175, *writ denied*, 08-2771 (La. 2/20/09), 1 So.3d 495, and *Smith v. Roy O. Martin Lumber Co.*, 03-1441 (La.App. 3 Cir. 4/14/04), 871 So.2d 661, *writ denied*, 04-1311 (La. 9/24/04), 882 So.2d 1144, both stand for the proposition that medical expenses must be awarded to the injured employee. We, though, are persuaded by the reasoning in *Moss v. Tommasi Const., Inc.*, 09-1419 (La.App. 3 Cir. 5/5/10), 37 So.3d 492, *writs denied*, 10-1243, 10-1306 (La. 9/17/10), 45 So.3d 1054, 1057.

16

In *Moss*, a construction worker fell from a scaffold and sustained leg injuries. His direct employer, Darson, who did not carry workers' compensation insurance, could not be located afterward and remained truant throughout the litigation. Shaw, the owner of the project, had persuaded his friend, Tommasi, to assist him in the construction job by procuring the necessary permits and supervising the work.

When Darson disappeared, Moss pursued the insurer of Shaw and Tommasi for compensation benefits and medical expenses.[2] Both Tommasi and Shaw argued that they were not employers of Moss. While the defendants wrangled with the issue of whom, if either, owed workers' compensation benefits to him, Mr. Moss accrued over $269,000 in medical expenses.

The WCJ found that Shaw, who was acting as his own general contractor in the construction, was Moss's statutory employer. Moss argued that the accrued medical expenses should be paid directly to him, citing *Smith*, 871 So.2d 661. The WCJ rejected this demand and ordered that the expenses be paid directly to the providers. On appeal, this court distinguished *Smith* because Mr. Smith had funded his medical expenses himself.

In the present matter, the WCJ found that Ms. Lenox personally paid no medical expenses other than a $50.00 co-pay to Dr. Dowd for services rendered on June 8, 2017. Spokes was ordered to pay that amount directly to Ms. Lenox. We find no manifest error in that finding. We agree with the reasoning in *Moss*, 37 So.3d 492, that in such a scenario, the proper procedure places the burden of ensuring payment of the medical expenses directly to the providers on the employer or its insurer and not on the injured employee. Thus, we find no error in the WCJ's ruling.

*Attorney Fees and Penalties*

---

[2] Tommasi and Shaw were separately insured by the same carrier.

17

Penalties and attorney fees are governed by La.R.S. 23:2101. "The unambiguous language of La.R.S. 23:1201 clearly establishes that penalties and attorney fees for failure to timely pay benefits shall be assessed unless the claim is reasonably controverted or such nonpayment results from conditions over which the employer or insurer had no control." *Brown v. Texas-LA Cartage, Inc.*, 98-1063, p. 8 (La. 12/1/98), 721 So.2d 885, 890.

> [T]o determine whether the claimant's right has been reasonably controverted, thereby precluding the imposition of penalties and attorney fees under La.R.S. 23:1201, a court must ascertain whether the employer or his insurer engaged in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed.

*Id.* The WCJ's decision to award penalties and attorney fees is reviewed under the manifest error standard. *Ryan v. Cajun Indus., L.L.C.*, 20-617 (La.App. 3 Cir. 11/3/21), 330 So.3d 324.

The WCJ found that Ms. Lenox's case represented a "close" one. Competent doctors disagreed on the issue of causation. The treating physicians, who had actually examined and treated Ms. Lenox, felt that the steroid injection introduced the staph into Ms. Lenox's lumbar spine, while Dr. Lutz, the infectious disease expert who possessed a more focused expertise, did not. The WCJ also noted that summary judgment had been granted Spokes earlier on the issue of causation, which was reversed by this court. *Lenox*, 265 So.3d 834.

We agree with the WCJ that Spokes did not engage "in a nonfrivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed." *Brown*, 721 So.2d at 890.

This assignment of error lacks merit.

*Answer to the Appeal*

Ms. Lenox has answered Spokes' appeal but requested no relief not sought in her brief.

## CONCLUSION

The WCJ credited the testimonies of Ms. Lenox, her husband, and Drs. Dowd and Hogg. The WCJ's determination in this case, with no internal inconsistencies in their testimonies, cannot be manifestly erroneous. Similarly, the WCJ is free to weigh the testimony of experts. The WCJ's decision to credit the expert testimony of the treating physicians over the testimony of Dr. Lutz does not constitute manifest error.

When an employee's health insurer has paid her medical expenses from a compensable injury, the employer's obligation for medical expenses is subject to an offset in the same percentage as it contributed to the premiums for the health insurance. In the present matter, the WCJ correctly applied Spokes' offset against the medical bills. The WCJ also properly placed the burden of ensuring proper payment of those bills on the employer and its insurer, thus relieving the employee of that task.

While Spokes' efforts at trial and on appeal did not succeed, it did not engage in a frivolous legal dispute. Spokes presented factual and medical information to reasonably counter the factual and medical information presented by the claimant throughout the time it refused to pay all or part of the benefits allegedly owed, including the pendency of this appeal.

The judgment of the Workers' Compensation Judge is affirmed. All costs of this appeal are taxed to Central Louisiana Spokes, LLC, and Zurich American Insurance Company.

**AFFIRMED.**